**Steven SOLOMON, d/b/a Leonardo's Pizza, Plaintiff-Appellant,**

v.

**CITY OF GAINESVILLE, a municipal corporation, Defendant-Appellee.**

**No. 83-3719.**

United States Court of Appeals, Eleventh Circuit.

June 21, 1985.

Bill Salmon, Gainesville, Fla., for plaintiff-appellant.

J.T. Frankenberger, City Atty., Gainesville, Fla., for Gainesville.

Charles B. Carter, Gainesville, Fla., for Davis.

Before RONEY and CLARK, Circuit Judges, and SIMPSON, Senior Circuit Judge.

PER CURIAM:

This appeal challenges the constitutionality of Section 29–100(b)(2) of the Gainesville Code, which provides:

> It shall be unlawful to erect, cause to be erected, maintain or cause to be maintained any of the following street graphics: signs or any other street graphics displaying any statement, word, character or illustration of an obscene, indecent or immoral nature.

Section 29–109 authorizes the City Manager or his designate to monitor compliance by making inspections, issuing notices of violation and requesting prosecution as appropriate. During June and July of 1982 a Gainesville city official sent letters of violation to Leonardo's Pizza finding that a sign above the restaurant, which depicted a modified version of Leonardo da Vinci's illustration "Proportions of the Human Figure," was in violation of Section 29–100(b)(2) and had to be corrected to avoid prosecution. The sign had been in place since 1974.

Solomon, as owner of Leonardo's, responded with a civil rights action under 42 U.S.C. § 1983 and also sought declaratory and injunctive relief on the basis that the statute was facially invalid.

The district court granted the city's motion for summary judgment on both counts but the appellant only challenges the constitutionality of the ordinance. Plaintiff's action under 42 U.S.C. § 1983 was waived on appeal. The district court found that the petitioner had no standing to challenge the sign ordinance. This finding stemmed in part from the fact that prior to petitioner's suit the Gainesville City Commission, by motion, instructed its City Manager to discontinue any and all prosecutorial action now and in the future with regard to the sign at issue.[1] Additionally, while the court recognized the liberal standing requirements traditionally applied to claims of overbreadth on First Amendment grounds, it found that the ordinance at issue regulated commercial speech, an area in which the liberal standing rules do not apply. Accordingly, the court applied traditional standing rules and found that the motion of the Gainesville City Commission, directing that enforcement of the ordinance against the petitioner not be sought in the present or future, precluded the petitioner from establishing the requisite harm to present a justiciable case or controversy. Furthermore, the court found that the City's notice of violation was directed to Leonardo's Pizza, not the petitioner as an individual, and therefore, even if the City were to rescind its agreement not to enforce the sign ordinance, Leonardo's Pizza, not petitioner would suffer the injury.

■ Upon a review of Section 29–100(b)(2) of the Gainesville Sign Ordinance

1. In *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982), the Court noted that the City omitted certain language from the ordinance pending appeal and then urged mootness. The court refused to dismiss, saying:

> In this case the City's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated.

455 U.S. at 289, 102 S.Ct. at 1074–75 (footnote omitted). Accordingly, the issue on appeal is not mooted by the motion of the Gainesville City Commission.

we find that the section through its broad terms attempts to regulate both protected and unprotected speech. Because of this overbreadth we hold that Section 29–100(b)(2) of the Gainesville Sign Ordinance is facially unconstitutional.

The district court erred in finding that the ordinance regulated only commercial speech. The objective of the ordinance is "to establish requirements for the placement, installation and maintenance of signs, or street graphics, in order to preserve and protect the health, safety, welfare and general well-being of the community's citizens." The stated intent of the ordinance is to authorize street graphics,

> [l]arge enough to sufficiently convey a message about the owner or occupants of a particular property, the products or services available on such property, or the business activities conducted on such property, yet small enough to preserve and protect the natural beauty of the City and limit distractions to motorists.

Section 29–98(d).

Nowhere does the ordinance explicitly differentiate between commercial and non-commercial speech. Indeed, owners or occupants of a particular property in Gainesville may wish to display a street graphic with no commercial purposes but which involves protected speech. Clearly, then the statute through its broad terms seeks to regulate both commercial and non-commercial speech.

Nor do we find that the Gainesville Ordinance meets the strict test required to limit commercial speech which was reiterated in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981):

> ... [I]n *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), we held: "The Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression. The protection available for a particular commercial expression turns on the nature both of the expression and of the governmental

interests served by its regulation." *Id.*, at 562–563, 100 S.Ct., at 2349–2350 (citation omitted). We then adopted a four-part test for the validity of government restrictions on commercial speech as distinguished from more fully protected speech. (1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Id.*, at 563–566, 100 S.Ct., at 2350–2351.

453 U.S. at 507, 101 S.Ct. at 2892. Here the sign did not involve unlawful activity nor was it misleading. Although Section 29–98(d) of the ordinance purported to seek to implement the substantial governmental interests of traffic safety and aesthetics, *see Metromedia*, 453 U.S. at 507–08, 101 S.Ct. at 2892, Section 29–100(b)(2) fails to "directly advance" those interests by outlawing signs of "an obscene, indecent or immoral" nature. As stated elsewhere, the ordinance obviously was overbroad.

Based upon our view of Supreme Court precedent, we hold that the petitioner has standing to challenge the statute on grounds of overbreadth. In so holding, we find that the liberal standing rules utilized in First Amendment challenges of overbreadth should have been applied to the petitioner in this case. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973); *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). We note that though the particular speech the petitioner seeks to protect in this instance was a sign distinguishing his place of business, in deciding whether to apply the liberal standing requirements for overbreadth challenges, we focus on what the statute seeks to regulate, not what the individual seeks to protect. In this instance, because the ordinance regulates both commercial and non-commercial speech, the petitioner

has standing to challenge the ordinance on the ground that it may substantially abridge the First Amendment rights of parties not before the court. As stated by the Supreme Court, "[w]e have never held that one with a 'commercial interest' in speech also cannot challenge the facial validity of a statute on the grounds of its substantial infringement of the First Amendment interest of others." *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 504 n. 11, 101 S.Ct. 2882, 2891, 69 L.Ed.2d 800 (1981).

We find that Section 29–100(b)(2) of the Gainesville Sign Ordinance is facially unconstitutional because of overbreadth and vagueness. Vagueness clearly exists in this instance because the prohibitions of Section 29–100(b)(2) are in no way defined. *See Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). Overbreadth results because Section 29–100(b)(2) by its broad, undefined terms necessarily sweeps within its ambit both protected and unprotected speech. *See Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973).

Accordingly, we REVERSE.