ACTION OUTDOOR ADVERTISING JV, L.L.C., a Georgia limited liability company, Plaintiff,

v.

TOWN OF SHALIMAR, FLORIDA, Defendant.

No. 3:03CV459/MCR.

United States District Court, N.D. Florida, Pensacola Division.

March 29, 2005.

David H. Flint, Mark W. Forsling, Schreeder Wheeler & Flint LLP, Atlanta, GA, Jesse Wendell Rigby, Clark Partington Hart Etc., Pensacola, FL, for Plaintiff.

D Michael Chesser, Chesser & Barr, P.A., Shalimar, FL, Leslie Dean Sheekley, for Defendant.

## ORDER

RODGERS, District Judge.

Plaintiff Action Outdoor Advertising JV, L.L.C. ("Plaintiff") sues Defendant Town of Shalimar, Florida, ("Defendant" or "Town") challenging the constitutionality of Defendant's sign ordinance. Presently before the Court are the parties' cross motions for summary judgment[1] (docs. 58; 59 as corrected at 75), along with memoranda and evidentiary materials in support

---

1. Plaintiff moves only for partial summary judgment, reserving the matter of the amount of damages.

(docs. 60; 61; 64; 67; 70; 72; 73; 87; 88), and the parties' responses in opposition (docs. 77; 78; 79). The Court, having heard oral argument on the motions and having taken summary judgment under advisement (doc. 68), grants Defendant's motion for summary judgment and denies Plaintiff's motion for partial summary judgment.

## BACKGROUND

### Facts and Procedural History

The following facts are undisputed. Plaintiff is a Georgia limited liability company which is engaged in the business of outdoor advertising. Defendant is a municipality which has a population of about 700 persons. It is approximately one mile by one-half mile in size, with its main commercial area located along a one-mile stretch of Highway 85 known as Eglin Parkway. In the spring of 2003 Plaintiff entered into ground lease agreements with certain landowners in Shalimar to construct and operate signs on their properties along Eglin Parkway. On July 1, 2003, Plaintiff submitted two permit applications to the Town to build one sign on each of the leased properties. The erection of signs in Shalimar is governed by Ordinance No.1999–07, codified at Article XI, Sections 82–316 through 82–370 ("Sign Ordinance") of the Shalimar Code of Ordinances ("Code"). In a letter dated July 9, 2003, the Town's manager, Tom Burns, denied the applications, stating that the proposed signs were billboards within the meaning of Section 82–316 of the Sign Ordinance and that billboards were prohibited in all zoning locations within the town

of Shalimar, as set forth in Section 82–352. Plaintiff appealed the denials to the Shalimar Town Commission; at a hearing held September 9, 2003, the Commission denied the appeals.

On October 8, 2003, Plaintiff filed this suit. Invoking the Court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, Plaintiff asserts in its seven count "Amended and Restated Petition for Mandamus and Complaint" that certain provisions of Defendant's Sign Ordinance violate the First, Fifth, and/or Fourteenth Amendments of the U.S. Constitution.[2] (Doc. 31). More particularly, Plaintiff alleges that the total ban on billboards in the Sign Ordinance constitutes an impermissible restriction on commercial speech (Count I); that the absence of permit application response-time limitations in the Sign Ordinance results in an unlawful prior restraint on free speech and violates the right to due process (Count II); that the Sign Ordinance's prohibition of billboards in effect is a total ban on all offsite signs,[3] which results in impermissibly favoring commercial speech over noncommercial speech (Count III); that the Sign Ordinance's exemptions from sign or building permit requirements for certain types of signs are content-based and thus the Ordinance unlawfully discriminates between different types of noncommercial speech (Count IV); that the prohibition of all portable signs in the Sign Ordinance is not supported by any expression of governmental interests which further such a ban (Count V); that the Sign Ordinance is a comprehensive scheme which is not severable (Count VI); and that the denial of

---

**2.** Plaintiff also asserts state claims arising under Article I, Sections 2, 4, and 9, and Article X, Section 6(a) of the Constitution of the State of Florida.

**3.** The parties, and the Court, refer to "offsite" signs as those identifying or advertising a

business or activity which is not located on the property where the sign is located and "onsite" signs as those with respect to which the converse is true, *i.e.*, those identifying or advertising a business or activity which is found on the property where the sign is located.

Plaintiff's sign permit applications under the Sign Ordinance constitutes a taking and inverse condemnation of its property without adequate compensation (Count VII). As relief Plaintiff seeks a declaratory judgment that Defendant's Sign Ordinance is unconstitutional and void in its entirety; additionally, Plaintiff requests a mandatory injunction directing Defendant to issue the two disputed sign permits or, alternatively, a declaratory judgment that Plaintiff may erect its signs without obtaining permits. Plaintiff also demands judgment for damages, attorneys' fees and expenses, and all other costs of this action.

### Relevant Provisions of the Shalimar Code of Ordinances

The preamble to Ordinance No.1999–07 in part states that "it is necessary for the town to balance the First Amendment rights, property interests, and rights of free expression of [its] citizens with the potential for confusion, unsafe driving conditions, and the lack of aesthetics presented by some signs and combinations of signs." Additionally, the purpose section of the Sign Ordinance, as set out in Section 82–317, in part provides that

(a) The requirements of this chapter are the minimum requirements to promote the public health, safety, aesthetics and welfare and to maintain, enhance, improve and protect the appearance and character of residential, professional office, commercial, and industrial areas of the town. Additionally, this chapter will improve traffic safety and control the number, location, size and type of signs while still permitting reasonable identification and advertising by professional, commercial and industrial establishments.

\* \* \* \* \* \*

(c).... This article shall not regulate ... the content and message of signs....

Commercial signs are defined in Section 82–316 as signs "related primarily to the economic interests of the owner or lessee of such sign and its readers" while noncommercial signs are those "relating primarily to interests other than to [the] economic interest of the speaker and its audience." Section 82–316 defines a "ground sign" as "a sign supported by uprights, braces, or poles or itself permanently placed in the ground and wholly independent of a building for support and which the subject of the sign relates to either the identifying of the business name or the activity carried on in the structure on the same property as the sign." Section 82–358 sets out height, number, setback, copy area, and ground clearance restrictions for ground signs. Section 82–316 defines a "[b]illboard or billboard sign" as "any sign which provides information of any kind concerning any activity that takes place on property other than that where the sign is located." Section 82–352(4) provides that "[b]illboard signs, regardless of zoning district" are prohibited. Pursuant to Section 82–370 all portable signs also are prohibited.

Section 82–332 provides that all new signs are required to have a permit. Certain signs having no electrical parts or usage are exempt from the sign permit requirement, including political and campaign signs which do not exceed four square feet in copy area. A political sign is defined in Section 82–316 as a "temporary sign identifying and urging vote support for or in opposition to a particular issue, political party or candidate for public office ... which is four square feet or less" in size. A "temporary sign" is one "with intended duration of existence of less than three months and which does not in fact exceed a duration of three months." *Id.* Section 82–333 states that a building permit must be obtained prior to erecting

a sign. Some specified signs are exempt from the building permit requirement, including temporary signs advising of special activities by a nonprofit organization. Pursuant to Section 58–182(b), applications for building permits must be acted upon by an administrative official within two weeks from the date of their submission.[4]

### SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A factual dispute is " 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992).

The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. 2548. "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Although evidence presented in opposition to the motion for summary judgment, and all factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir.1999), a general denial unaccompanied by any evidentiary support will not suffice. *See, e.g., Courson v. McMillian*, 939 F.2d 1479 (11th Cir.1991); *Hutton v. Strickland*, 919 F.2d 1531 (11th Cir.1990). Moreover, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S.Ct. 2505.

### DISCUSSION

#### Standing

■ This Court's jurisdiction to consider Plaintiff's claims is limited by Article III of the United States Constitution, which requires federal courts to consider only actual "cases" and "controversies." U.S. Const., Art. III. The cases or controversies limitation must be strictly observed. *See National Advertising Co. v. City of Miami*, 402 F.3d 1329 (11th Cir. 2005). Part of the cases or controversies limitation includes the doctrine of standing, which consists of constitutional as well as prudential requirements. *See Granite State Outdoor Advertising, Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir.

---

**4.** The Sign Ordinance does not address time limitations for acting upon sign permit applications. Nor does it define "offsite" or "onsite" signs.

2003) (*"City of Clearwater"*) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992), and *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997)), *cert. denied*, —— U.S. ——, 125 S.Ct. 48, 160 L.Ed.2d 17 (2004). The party invoking federal jurisdiction bears the burden of proving constitutional standing. *See Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. To meet his burden, the party must show injury-in-fact, causation, and redressability. *See Northeastern Florida Contractors v. Jacksonville*, 508 U.S. 656, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993). An injury-in-fact means an injury that is "concrete and particularized, and actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Three prudential principles bear on standing. The party's claim must fall "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question"; the claim must be for injury to the party's own legal rights and interests, rather than the legal rights or interests of third parties; and the injury must be individualized or confined to a discrete group. *See, e.g., Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Among the exceptions to the prudential standing requirements is the " 'overbreadth doctrine,' an exception that applies in First Amendment cases involving noncommercial speech and that permits third-party standing when a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court." *City of Clearwater*, 351 F.3d at 1112 (*citing Village of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 634, 100 S.Ct. 826, 834–35, 63 L.Ed.2d 73 (1980)); *see also Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796–99, 104 S.Ct. 2118, 2124–25, 80 L.Ed.2d 772 (1984) (indicating that while a plaintiff who does not have standing to challenge an ordinance as applied to him ordinarily does not have standing to assert a facial challenge to the same ordinance, an exception exists where the party challenges the ordinance pursuant to the overbreadth doctrine). "[A] law's application to protected speech [must] be substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications, before applying the strong medicine of overbreadth invalidation." *Virginia v. Hicks*, 539 U.S. 113, 120, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (citation and quotation marks omitted); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Therefore, to allow a party to attack an otherwise legitimate statute on overbreadth grounds, particularly where the statute's purpose is to regulate conduct and not speech, the overbreadth must be "not only real but substantial as well," such that there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Vincent*, 466 U.S. at 799–801, 104 S.Ct. 2118. Moreover, the overbreadth exception to the prudential standing doctrine does not excuse the party from satisfying the constitutional standing requirements. *See Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 884 (11th Cir.2000). As required by Article III, the party who seeks to make an overbreadth challenge must first demonstrate that he has suffered an injury-in-fact, which requires him to "@show that he personally has suffered some actual or threatened injury." *City of Clearwater*, 351 F.3d at 1112 (citation and internal quotation marks omitted). "While this requirement is hard to define precisely, we know that the plaintiff must at least claim to personally suffer some harm." *Id.*

With the above principles in mind, the Court proceeds to consider whether Plaintiff has established that it has standing to

assert the challenges set out in Counts I through V of its amended complaint.[5]

■ In Count II Plaintiff alleges that the absence of time limits in the Sign Ordinance within which a Town official must respond to sign permit applications constitutes an unlawful prior restraint on free speech and violates due process. In light of the Eleventh Circuit's opinion in *City of Clearwater, supra,* the Court concludes that Plaintiff cannot show that it has standing to prosecute this claim. In *City of Clearwater,* a billboard advertising company sought to challenge that part of the City's sign ordinance under which the company's billboard applications had been denied on the ground they exceeded specific area and height restrictions. The plaintiff also challenged a section of the ordinance which dealt with the approval of permit applications and the process for appealing a denied application; the plaintiff argued that the permit and appeals section was constitutionally defective because it gave city officials an unlimited amount of time in which to decide whether to grant or deny permit applications and thus it lacked adequate procedural safeguards. The court found that the plaintiff only had standing to challenge the constitutionality of the specific section under which its applications had been denied, *i.e.,*

the section which restricted the area and height of signs, but not the permitting and appeals section, because the plaintiff had not shown an injury-in-fact with respect to the latter provision. The court noted that the plaintiff's argument that the permitting and appeals section of the ordinance was invalid

> [b]y itself, does not create Article III standing. [The plaintiff] has neither alleged nor shown how the City's permitting and appeals procedure has injured [it]. To the contrary, the record shows that [plaintiff's] permits were denied within a reasonable time: the same day they were submitted.

*City of Clearwater,* 351 F.3d at 1117.

The instant case presents a similar situation. Plaintiff has neither shown nor alleged that it personally was injured by the Town's permitting procedure. Rather, it is undisputed that after Plaintiff filed its applications on July 1, 2003, Mr. Burns denied the applications in writing on July 9, 2003.[6] As the period between the filing and disposition of the permits was only eight days, it is clear that the permits were denied within a reasonable time. Therefore, because Plaintiff has not demonstrated that it sustained an injury-in-fact from the permitting procedure, it has not estab-

---

5. In an as-applied challenge the plaintiff ordinarily argues that "a statute cannot be applied to her because its application would violate her personal constitutional rights." Richard H. Fallon, *As Applied and Facial Challenges and Third Party Standing,* 113 Harv. L.Rev. 1321, 1321 (2000). By contrast, a "facial" attack asserts that "a statute is more generally invalid" and should be struck down in all its applications. *Id.* at 1326. Although Plaintiff in this case does not clearly specify whether its challenges to the sign ordinance are facial or as-applied, the Court considers that Counts I and II are both and that the remaining challenges are facial only, with standing contended to be conferred pursuant to the overbreadth doctrine.

6. Further, the record reflects that Mr. Burns orally denied the applications upon their submission on July 1, 2003. (Doc. 64, Exh. A–12). The Court need not decide whether Plaintiff received a " 'binding conclusive administrative decision' " denying its permit applications on that date, however, since Plaintiff clearly received such a decision on July 9, 2003. *See National Advertising Co. v. City of Miami,* 402 F.3d 1335 (11th Cir.2005) (affirming district court's grant of summary judgment on ground plaintiff failed to obtain official rejection of its permit applications and thus its case was not ripe). Nevertheless, given Mr. Burns' undisputed authority to grant or deny sign permit applications, it may be that Plaintiff in fact obtained a final decision on its requests on July 1, 2003.

lished its standing to challenge the Sign Ordinance in this respect, as alleged in Count II.

■ In Count IV Plaintiff alleges that Sections 82–332(b) and 82–333(b) of the Sign Ordinance impermissibly discriminate between different types of noncommercial speech; in particular, Plaintiff points to the exemptions for political signs and for temporary signs advising of special activities by nonprofit organizations. According to Plaintiff, the Sign Ordinance improperly distinguishes, on the basis of content, those signs which it regulates and for which it requires a permit and those as to which it does neither. Plaintiff maintains that this distinction is not narrowly tailored to achieve any legitimate governmental goal and therefore is unconstitutional. The Court again concludes that Plaintiff has failed to make any showing of an injury-in-fact resulting from the provisions of the Sign Ordinance which exempt certain types of signs from permitting requirements. Therefore, in accordance with the reasoning discussed above in *City of Clearwater*, the Court finds that Plaintiff has not shown that it has standing to bring a challenge under the facial overbreadth doctrine as to the allegations contained in Count IV.

■ In Count V Plaintiff complains that although Section 82–370 prohibits the display of portable signs, the Sign Ordinance lacks a statement of purpose expressing the governmental interests sought to be furthered by such a ban. According to Plaintiff, because the total prohibition of the display of portable signs is not narrowly tailored to achieve any legitimate governmental purpose the Sign Ordinance is unconstitutional in this regard. Plaintiff has not shown or alleged, however, that it has personally sustained any injury as a result of the Town's prohibition of the display of portable signs. Thus, to the extent Plaintiff challenges the Sign Ordi-

nance's ban on portable signs as impermissibly restricting noncommercial speech, Plaintiff also has not established that it has standing to bring a facial overbreadth challenge to this provision of the Ordinance, as alleged in Count V.

■ With respect to the commercial speech claim asserted in Count I, the Court concludes that Plaintiff has demonstrated particularized, imminent injury which is traceable to the Town's conduct and which can be judicially redressed. Plaintiff submitted two applications for permits to erect billboards in the Town which, citing Sections 82–316 and 82–352 of its Sign Ordinance, the Town manager denied. Moreover, this Court has the power to strike and enjoin enforcement of any provisions of the Sign Ordinance which it finds unconstitutional. Accordingly, Plaintiff has established its Article III standing to challenge those sections of the Sign Ordinance pertaining to the ban on billboards which Plaintiff contends impermissibly restrict commercial speech.

In Count III Plaintiff asserts that the Sign Ordinance unconstitutionally infringes on noncommercial speech. The matter of standing as to Count III presents a closer question than did Counts I, II, IV, and V, as Plaintiff has demonstrated that it personally suffered an injury-in-fact to its commercial speech rights resulting from the Sign Ordinance's total ban on billboards. In support of its contention that Plaintiff lacks standing to assert a facial overbreadth challenge regarding noncommercial speech, Defendant cites *National Advertising Co. v. City of Miami*, 287 F.Supp.2d 1349 (S.D.Fla.2003) (*"City of Miami"*), which held that an outdoor advertising company did not have standing pursuant to the overbreadth doctrine to bring a facial challenge to provisions of an ordinance affecting noncommercial speech. Plaintiff submits that the

district court's decision in *City of Miami* is not binding on this Court and that instead the Eleventh Circuit's decisions in *National Advertising Co. v. City of Fort Lauderdale,* 934 F.2d 283, 286 (11th Cir.1991) ("*City of Fort Lauderdale*"), *Dimmitt v. City of Clearwater,* 985 F.2d 1565 (11th Cir.1993), and *Solomon v. City of Gainesville,* 763 F.2d 1212 (11th Cir.1985), should control.

With respect to the instant case, the Court first notes that very recently the Eleventh Circuit reversed the district court's grant of summary judgment in defendant's favor in *City of Miami,* finding that the City's amendments to its zoning code had rendered the case moot. *National Advertising Co. v. City of Miami,* 402 F.3d 1329 (11th Cir.2005). Nevertheless, as discussed below, this Court finds the district court's reasoning in *City of Miami* pertaining to standing to be persuasive and the basis for the holdings in *City of Fort Lauderdale, Dimmitt,* and *Solomon* to be distinguishable from the instant case.

*Metromedia, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion), is the leading decision in the field of billboard regulations. Contrary to Plaintiff's apparent reading of the case, this Court does not understand *Metromedia* to stand for the proposition that a plaintiff with merely a *de minimis* interest in noncommercial speech may facially challenge an ordinance, thereby raising the noncommercial speech interests of parties who are not before the court and who have not shown any injury. In *Metromedia* the Supreme Court passed on a city ordinance that imposed substantial prohibitions

against outdoor advertising displays in the interest of traffic safety and esthetics.[7] The Court permitted the plaintiff, a commercial billboard company, to challenge the ordinance pursuant to the overbreadth doctrine because "although the bulk of their business consists of offsite signs carrying commercial advertisements, their billboards also convey a *substantial* amount of noncommercial advertising." *Metromedia,* 453 U.S. at 504, 101 S.Ct. 2882 (emphasis added); *see City of Miami,* 287 F.Supp.2d at 1359–60. In the instant case, Plaintiff acknowledges that 99% of its offsite sign advertising business is commercial and that only 1% of such business is noncommercial. (Doc. 64, Exh. C, Answer to Interrogatory 3(c)). That one percent of Plaintiff's advertising business may contain noncommercial messages does not, in this Court's view, constitute a " 'substantial amount of noncommercial advertising,' " which is a "prerequisite to invoking the overbreadth exception." *City of Miami,* 287 F.Supp.2d at 1361. Moreover, the overbreadth exception, which has limited application in any event, "becomes less justified as the behavior sought to be regulated moves from 'pure speech' toward conduct." *Broadrick,* 413 U.S. at 615, 93 S.Ct. 2908. In this case, the avowed purpose of the Town's Sign Ordinance is to promote safety and esthetics, and by its terms the Sign Ordinance expressly states that it does not regulate the content and message of signs. Preamble to 1999–07; Section 82–317(a)(c). Thus, as the *Broadrick* Court noted was significant in considering whether adequate justification exists for applying the overbreadth exception,

---

7. The San Diego ordinance at issue in *Metromedia* banned all outdoor advertising except that which advertised "onsite" activities and that which fell within certain listed exceptions. *Metromedia,* 453 U.S. at 494, 101 S.Ct. 2882. A plurality of the Court invalidated the ordinance in its entirety, stating that it impermissibly discriminated on the basis of content by permitting onsite commercial speech while broadly prohibiting noncommercial messages that did not fall within the various exceptions. *Id.* at 514–15, 101 S.Ct. 2882.

the purpose of the Town's Sign Ordinance is to regulate conduct rather than to regulate speech. Finally, not only has Plaintiff failed to show that it has sustained an injury with regard to any noncommercial speech rights of its own resulting from Defendant's ban on offsite signs but also it has not demonstrated any "realistic danger" that the prohibition threatens the First Amendment rights of others not before the Court. *See City of Miami*, 287 F.Supp.2d at 1360. Plaintiff has not pointed to a single instance in which the Town has infringed on the noncommercial free speech rights of others; indeed, Mr. Burns averred that to his knowledge, "no person or entity has ever been denied the right to erect a sign bearing a noncommercial message (ideological or political or otherwise) within the Town of Shalimar, based upon the viewpoint of the message to be displayed." (Doc. 64, Exh. A, ¶ 24).

For the foregoing reasons, this Court concludes that Plaintiff has not established its standing to raise a facial overbreadth challenge asserting that the Town discriminates against noncommercial speech by banning all offsite signs. This conclusion is not altered by the decisions in *City of Fort Lauderdale*, *Dimmitt*, and *Solomon*. In each of those cases the court concluded

that the plaintiff-whose own speech was solely commercial-had standing to assert the First Amendment rights of others not before the court.[8] In none of those cases, however, did the court discuss whether the plaintiff had engaged in a "substantial amount of noncommercial advertising," as the Supreme Court indicated was true with respect to Metromedia in finding the company was entitled to bring a noncommercial speech challenge. Moreover, as the district court in *City of Miami* noted "[i]t defies logic and all reasonable interpretation of the language of *Metromedia*" to read the Supreme Court's statement that it had never held that a party with a commercial interest in speech could not also bring a facial overbreadth challenge as standing for the "legal principal that even a slight (*de minimis*) interest in noncommercial speech" gave an entity with overwhelmingly commercial interests "the right to take up the sword on behalf of noncommercial advertisers (if any) in the battles they fight to protect their commercial interests." *City of Miami*, 287 F.Supp.2d at 1362.

Notwithstanding the above conclusion that Plaintiff has not established its standing to prosecute its claim that the Town's billboard ban impermissibly dis-

8. In *City of Fort Lauderdale*, the court held that an outdoor advertising company possessed standing to assert claims for the alleged violation of First Amendment rights on behalf of itself and its advertisers. In reaching this conclusion the court relied on a footnote in *Metromedia*, in which the Supreme Court stated "we have never held that one with a 'commercial interest' in speech also cannot challenge the facial validity of a statute on the grounds of its substantial infringement of the First Amendment interest of others." *City of Fort Lauderdale*, 934 F.2d at 285 (*citing Metromedia*, 453 U.S. at 505 n. 11, 101 S.Ct. 2882). Likewise citing the Supreme Court's footnote in *Metromedia*, the court in *Solomon* held that a pizza parlor owner seeking to protect a sign distinguishing his place of business had standing to assert an over-

breadth challenge to the city's sign ordinance which made it unlawful to erect signs displaying matters of an obscene, immoral, or indecent nature. The *Solomon* court concluded that because the ordinance at issue regulated both commercial and noncommercial speech the plaintiff had standing to assert a challenge on the ground the ordinance "may substantially abridge the First Amendment rights of parties not before the court." *Solomon*, 763 F.2d at 1214–15. In *Dimmitt*, the court permitted an overbreadth challenge by a car dealership and rejected as impermissibly content-based a city ordinance which required landowners to obtain a permit before flying a specified number of flags on their property but exempted from the permit requirement any flags representing a governmental unit.

criminates against noncommercial speech, the Court must acknowledge the lack of clear guidance in this area of First Amendment jurisprudence. As discussed *infra*, the *Metromedia* decision was fractured, producing five separate opinions. Indeed, writing in dissent Justice Rehnquist lamented that it was "a genuine misfortune to have the Court's treatment of the subject be a virtual Tower of Babel, from which no definitive principles can be clearly drawn." *Metromedia*, 453 U.S. at 569, 101 S.Ct. 2882 (Rehnquist, J., dissenting); *see also City of Miami*, 287 F.Supp.2d at 1361, 1369 (noting the uncertainty in the law with respect to facial standing in billboard cases and proceeding to analyze the plaintiff's claim that the zoning ordinance unconstitutionally discriminated against noncommercial speech despite its finding of no standing). Furthermore, as discussed, Eleventh Circuit precedent has not addressed whether a plaintiff must demonstrate a "substantial interest" in noncommercial speech in order to raise a challenge under the overbreadth doctrine, much less expressly required a plaintiff to do so. For these reasons, the Court shall assume that Plaintiff has demonstrated that it has standing to raise the assertions in Count III which pertain to the ban of offsite signs and shall proceed to address the substance of those allegations.

In sum, with respect to whether Plaintiff has established standing to challenge various provisions of the Town's Sign Ordinance, the Court concludes as follows. Plaintiff has not shown that it has suffered any injury-in-fact in connection with provisions of the Sign Ordinance dealing with time limitations for responding to permit applications, exemptions for certain signs from permit requirements, or the prohibition of portable signs. Thus Plaintiff is unable to establish its standing to assert the claims set forth in Count II, IV, and V. Consequently, Defendant is entitled to judgment as a matter of law as to those counts. Plaintiff has sustained an injury-in-fact with respect to the ban on billboards, which accords it standing to challenge the relevant provision of the Sign Ordinance with respect to its commercial speech rights, as set forth in Count I. Finally, the Court is persuaded that Plaintiff does not have standing to bring an overbreadth challenge with respect to its assertions that the Town's Sign Ordinance impermissibly favors commercial speech over noncommercial speech. Nevertheless, given the lack of clarity in this area of First Amendment law, the Court shall assume that Plaintiff does have standing to assert such a challenge with respect to those provisions of the Sign Ordinance which pertain to the ban on billboards. The Court therefore shall, to the limited extent discussed below, consider the allegations set out in Count III.[9]

### Count I

Plaintiff alleges in Count I that the Town's total ban on billboards, as billboards are defined in Section 82–316 and prohibited in Section 82–352(4) of the Sign Ordinance, constitutes an impermissible restriction on commercial speech.

■ "[T]he *Metromedia* decision controls the 'law of billboards.'" *Cafe Erotica*

---

9. Defendant also argues in its memorandum that Plaintiff lacks standing because it was not licensed to do business with the Florida Secretary of State when it applied for the sign permits and thus had no reasonable expectation of having the applications approved at the time it submitted them. Plaintiff maintains it was appropriately licensed with the Florida Department of Transportation when it filed its applications. The Court did not locate discussion or evidence with respect to this argument by Defendant, including that an entity must be licensed with the Secretary of State in order to obtain a sign or building permit from the Town. Accordingly, the Court does not consider this argument further.

of Florida, Inc. v. St. Johns County, 360 F.3d 1274, 1286 (11th Cir.2004). In *Metromedia* the plurality opinion reiterated the standard for determining the constitutionality of governmental restrictions on commercial speech:

(1) The First Amendment protects commercial speech only if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia*, 453 U.S. at 507, 101 S.Ct. 2882 (citing *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980)); *Cafe Erotica*, 360 F.3d at 1286 n. 14. The Supreme Court has also instructed that the "party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770, 113 S.Ct. 1792, 1800, 123 L.Ed.2d 543 (1993) (citation omitted).

■ To the extent Plaintiff argues that no majority opinion of the Supreme Court—in *Metromedia* or in any other case—has held that a complete ban on billboards is constitutional, Plaintiff is correct. The plurality in *Metromedia* stated that "[b]ecause a total prohibition of outdoor advertising is not before us, we do not indicate whether such a ban would be consistent with the First Amendment." *Id.* at 515 n. 20, 101 S.Ct. 2882. Writing in dissent, Justice Stevens noted that the plurality's invalidation of the ordinance was due to the city's failure "to include a total ban on the use of billboards for both commercial and noncommercial messages ..." but that it had left "open the possibility that a total ban on billboards would be permissible...." *Id.* at 515 n. 20, 101 S.Ct. 2882. Nevertheless, although the *Metromedia* plurality found the ordinance at issue to be unconstitutional due to an impermissible preference of commercial speech over noncommercial speech, seven justices agreed that a total prohibition of offsite commercial signs is constitutional. *Id.* at 511–12, 101 S.Ct. 2882. Furthermore, on at least two occasions the Eleventh Circuit has recognized the justices' agreement on this issue. *See Harnish v. Manatee County, Florida*, 783 F.2d 1535, 1540 n. 7, (11th Cir.1986),[10] and *Dills v. City of Marietta, Georgia*, 674 F.2d 1377 (11th Cir.1982).[11] Notwithstanding, to the extent the issue of the permissibility of a total ban on billboards should be deemed unsettled, this Court concludes that the Town's prohibition of billboards passes constitutional muster.

In its written arguments Plaintiff wisely concedes the first and second criteria of the four-part *Central Hudson* test.[12] As

**10.** "While five separate opinions were filed by the Court, it is clear that a total ban on commercial billboards did not offend the First Amendment in the eyes of seven of the Justices." *Harnish*, 783 F.2d at 1540 n. 7.

**11.** "Chief Justice Burger and Justice Rehnquist, like Justice Stevens, expressed views that the San Diego ordinance was constitutional as to both the commercial and noncommercial speech aspects. Hence a total of seven justices agreed that San Diego had sufficiently justified a total ban of off-site commercial advertising." *Dills*, 674 F.2d at 1381 n. 4.

**12.** Plaintiff did not, however, concede the second criteria at oral argument, at which it maintained that *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (invalidating a ban on newsracks distributing commercial handbills but not those distributing newspapers), should govern analysis of the first prong of the *Central Hudson* test. As to the third and fourth parts of the *Central Hudson* test, Plaintiff suggests in both his oral and

in *Metromedia*, in this case there is "no suggestion that the commercial advertising at issue here involves unlawful activity or is misleading." *Metromedia*, 453 U.S. at 507, 101 S.Ct. 2882. In addition, given the purposes set out in the Sign Ordinance, cited above, there is no real issue as to whether the stated goals that the Town's Ordinance seeks to further by banning billboards, including safety and aesthetics, are substantial government interests: they are. *See id.* at 507–08, 101 S.Ct. 2882 ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals. It is far too late to contend otherwise...."). In fact, following *Metromedia* courts in the Eleventh Circuit have uniformly found the promotion of safety or aesthetics to constitute substantial government interests. *See Southlake Property, Ltd. v. City of Morrow, Georgia*, 112 F.3d 1114, 1116 (11th Cir.1997) (stating that aesthetics and safety have been recognized as significant governmental interests which support time, place, and manner restrictions on commercial signs); *Harnish*, 783 F.2d at 1539 (noting that *Metromedia* and its progeny conclusive establish that aesthetics are a substantial governmental interest which is entitled to great respect); *Dills*, 674 F.2d at 1381; *Lamar Adver. Co. v. City of Douglasville, Georgia*, 254 F.Supp.2d 1321, 1335 (N.D.Ga.2003).

Defendant submits that its prohibition of offsite advertising on billboards directly advances its substantial interests in the appearance of the Town and of traffic safety, as required by the third criterion of the *Central Hudson* test. Plaintiff counters that Defendant's ordinance prohibiting offsite commercial signs, while permitting onsite commercial signs, does not further the Town's stated interests in a direct and material manner. Plaintiff also asserts that Defendant may not satisfy its burden

written arguments that *Edenfield v. Fane, supra* (rejecting prohibition on in-person solicitation by certified public accountants), *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995) (striking down prohibition on beer labels that identify alcohol content); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 507, 116 S.Ct. 1495, 1510, 134 L.Ed.2d 711 (1996) (rejecting ban on advertising of retail prices of alcoholic beverages); and *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554–55, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (finding unconstitutional regulation of advertising to reduce underage tobacco use, but upholding restriction on manner of sale), should guide the Court's analysis.

This Court is mindful of the Supreme Court's admonition in *Metromedia* that "[e]ach method of communicating ideas is 'a law unto itself' and that law must reflect the 'differing natures, values, abuses and dangers' of each method. We deal here with the law of billboards." *Metromedia*, 453 U.S. at 501, 101 S.Ct. 2882 (quotation omitted). Moreover, as the Eleventh Circuit has recently noted, *Metromedia* continues to control the law of billboards. *See Cafe Erotica*, 360 F.3d at 1286. Notwithstanding its lack of a definitive majority opinion, the facts and discussion from *Metromedia* appear relevant to the issues presented in Count I of the instant matter involving the "law of billboards." Furthermore, as noted previously, seven justices agreed in *Metromedia* that a total ban on billboards was not unconstitutional. Plaintiff has not attempted to distinguish *Metromedia* from the cases it cites. Nor has Plaintiff otherwise explained why, if indeed the analyses in the cases it references deviate in any significant respects from the analysis in *Metromedia*, this Court should stray from reliance upon *Metromedia*. Moreover, the cases Plaintiff cites are factually distinguishable as the interests asserted in them are unrelated to those interests in traffic safety and aesthetics which Defendant in the instant case posits as justification for its sign ordinance, which interests are identical to those discussed in *Metromedia*. Thus, as to the application of all four criteria of the *Central Hudson* test in Count I, this Court looks to *Metromedia* and its "billboard" progeny for guidance.

by "mere speculation and conjecture" and that Defendant has not demonstrated that the harms the challenged ordinance seeks to address are real or that a total ban on billboards in fact alleviates those harms to a material degree.

*Metromedia* supports a finding in this case that Defendant has satisfied the third factor in the *Central Hudson* test. As the *Metromedia* plurality stated, "whether onsite advertising is permitted or not, the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and aesthetics. This is not altered by the fact that the ordinance is underinclusive because it permits onsite advertising." *Metromedia,* 453 U.S. at 511, 101 S.Ct. 2882. The Court in *Metromedia* indicated that the third prong of the *Central Hudson* test is satisfied where legislative judgment is not "manifestly unreasonable." *Metromedia,* 453 U.S. at 509, 101 S.Ct. 2882. This requirement is met in the instant case. The preamble reflects that the Town's Sign Ordinance was adopted to improve traffic safety and to increase the esthetic beauty of the Town. Article XI, Section 82–317, Shalimar Code of Ordinances. Moreover, the record before the Court contains no evidence which suggests that the Sign Ordinance fails to directly advance Defendant's legitimate goals. As there simply is no basis for this Court to disagree with the judgment of Defendant's local lawmakers, it will not do so.[13] Further, consistent with *Metromedia,* this Court finds that it is not unreasonable for those lawmakers to conclude that offsite signs in themselves constitute an esthetic harm wherever they are located or placed. *See id.* at 510, 101 S.Ct. 2882. In short,

this Court concludes that the Town's prohibition of offsite signs directly advances its interests in maintaining traffic safety and aesthetics.

Next, Defendant argues that its ordinance meets the fourth prong of *Central Hudson* test because in banning billboards extends no further than necessary to accomplish the Town's legitimate objectives in aesthetics and traffic safety. Plaintiff responds that the total ban on all offsite signs is far more restrictive than required; the Town could adequately address safety, aesthetic, and other concerns with less stringent measures, such as limits on sign size and height or spacing.

Considering the fourth factor of the *Central Hudson* test, the Eleventh Circuit in *Harnish* discussed *Metromedia* and its "progeny," *Vincent, supra,* and *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). After describing the principles for which these three cases stood, the court explained that

> in analyzing the constitutionality of a restriction on commercial speech it should first be determined whether the governmental goal is an appropriate and substantial one. Having determined that it is, the next step is scrutiny of the regulation to see whether the means chosen advance the goal. If the means reasonably advance the goal and there is no evidence in support of a finding that less restrictive means are available, the court should not attempt to speculate as to whether less restrictive means exist. Rather, analysis should be limited to

**13.** In *Metromedia* the Supreme Court specifically accepted the legislative judgment that prohibiting billboards promotes traffic safety and the aesthetics of the surrounding area. *See Metromedia,* 453 U.S. at 509–10, 101 S.Ct. 2882. In no commercial speech case following *Metromedia* has the Court cast doubt on

the appropriateness of accepting the commonsense judgment of local lawmakers. *See Greater New Orleans, supra; United States v. Edge Broad. Co.,* 509 U.S. 418, 434, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993); and *44 Liquormart, supra.*

whether the means are reasonably and narrowly drawn to further the objective. *Harnish,* 783 F.2d at 1540.

Applying this analysis the Eleventh Circuit concluded that the lower court had erred because—although it had properly determined that the ordinance under review reasonably advanced a substantial governmental goal—the record was devoid of evidence from which it might reasonably be inferred that less restrictive means existed to accomplish the desired objective. *Id.*

Likewise, in the instant case there is no evidence before this Court from which it might be inferred that there exist means less restrictive for achieving the Town's goals to improve safety and preserve aesthetics than its total ban on billboards. Thus this Court concludes that the Town's billboard prohibition satisfies prong four of the *Central Hudson* test as it does not reach further than necessary to serve the asserted governmental interests in traffic safety and aesthetics. *See Metromedia,* 453 U.S. at 512, 101 S.Ct. 2882; *see also Don's Porta Signs, Inc. v. City of Clearwater,* 829 F.2d 1051, 1054 (11th Cir.1987).

Accordingly, the Court concludes that Defendant's Sign Ordinance prohibiting billboards, as billboards are defined in Section 82–316 and prohibited in Section 82–352(4), satisfies the four criteria of the test set out in *Central Hudson.* Thus the Court finds that the Ordinance does not, on its face, unconstitutionally restrict commercial speech. Moreover, the billboard ban was constitutionally applied to Plaintiff. Plaintiff sought to erect signs providing information concerning activities taking place "on property other than that where the sign is located," which Section 82–352(4) expressly—and, as explained above—constitutionally prohibits.

For all of the foregoing reasons, the Court finds that Plaintiff has failed to meet its summary judgment burden and that Defendant therefore is entitled to judgment as a matter of law in its favor as to Count I.

### Count III

In Count III Plaintiff asserts that the Sign Ordinance is unconstitutional because it improperly favors commercial speech over noncommercial speech. According to Plaintiff, the Ordinance's ban on billboards "is in fact a ban on all offsite signs," including all noncommercial signs, and thus impermissibly restricts noncommercial speech. (Doc. 60 at 11). Further, Plaintiff argues, the Town's regulatory scheme is invalid because it allows certain onsite commercial signs but prohibits offsite commercial and noncommercial signs on the basis of content.

Defendant asserts that in accordance with the Eleventh Circuit's holding in *Southlake Property Associates, supra,* this Court should find that the Sign Ordinance's ban on billboards does not offend the Constitution. According to Defendant, as in *Southlake Property Associates,* in this case the Town's Ordinance does not place an impermissible burden on noncommercial speech because it is content and viewpoint neutral; further, under the "alternative" view that all noncommercial messages are inherently onsite, the Ordinance does not even reach noncommercial speech. Defendant also points to *Messer v. City of Douglasville, Georgia,* 975 F.2d 1505 (11th Cir.1992); *Coral Springs Street Systems, Inc. v. City of Sunrise,* 371 F.3d 1320 (11th Cir.2004); and *City of Miami* in support of its contention that it is entitled to summary judgment on Count III. Plaintiff responds that *Southlake Property Associates* is not controlling because the defendant's ordinance in that case did not restrain noncommercial speech while the Town's Sign Ordinance at issue here clearly does. Additionally, according to Plaintiff, the *Southlake Property Associates*

opinion did not address limitations on political signs. *Cafe Erotica, supra,* however, in fact did, with the Eleventh Circuit striking down an ordinance in part because it permitted billboards as large as 560 square feet but limited political signs to thirty-two square feet. Plaintiff also submits that *Messer* does not support the Town's position because, as the Eleventh Circuit noted in *Cafe Erotica* in refusing to apply the case, *Messer* addressed the validity of an offsite/onsite distinction between noncommercial signs only rather than discrimination between commercial and noncommercial messages, as is asserted in the instant case.

The Court concludes that *Southlake Property Associates* and *Coral Springs Street Systems* are dispositive of the limited issue before it regarding the billboard ban's effect upon noncommercial speech. In these cases the Eleventh Circuit specifically considered whether an ordinance that prohibits offsite signs and allows onsite signs unconstitutionally discriminates against noncommercial speech. *Southlake Property Associates,* 112 F.3d at 1114; *Coral Springs Street Systems,* 371 F.3d at 1344. In that part of the analysis in *Southlake Property Associates* which explicates this Circuit's "alternate view," the court reasoned that an idea, unlike a product, is located wherever the idea is expressed. *Southlake Property Associates,* 112 F.3d at 1119. Further, the court stated that "[t]he definition of a billboard as an offsite advertising sign does not include noncommercial speech as such speech is always onsite." *Id.* Citing *Southlake Property Associates,* the *Coral Street Systems* court recently reiterated that "according to the law of this Circuit, noncommercial messages are by definition onsite signs and therefore certainly not treated

unfavorably compared with commercial signs." *Coral Springs Street Systems,* 371 F.3d at 1344.

As noted above, the Town's Sign Ordinance in the instant case defines "billboard or billboard sign" as meaning "any sign which provides information of any kind concerning any activity that takes place on property other than that where the sign is located." Section 82–316. The Court agrees that the phrase "information of any kind concerning any activity" tends to suggest that the Ordinance encompasses both commercial and noncommercial speech. But, especially given the Eleventh Circuit's clear instruction that all noncommercial speech is inherently onsite, the phrase further defining a billboard as providing information concerning any activity "that takes place on property other than that where the sign is located" eliminates noncommercial speech from the scope of the definition's reach—and thus the ban on billboards set forth in Section 82–352(4).[14] Thus, while the prohibition against billboards unquestionably encompasses commercial speech it does not implicate noncommercial speech. Plaintiff's argument that the Town's ban on billboards in effect is an impermissible proscription against all noncommercial speech therefore fails.

■ Plaintiff's assertion that political signs and ground signs containing noncommercial speech are impermissibly restricted is also rejected. First, the Court concludes that Plaintiff lacks standing to challenge those provisions of the Sign Ordinance related to political or ground signs. Plaintiff's standing to assert the allegations contained in Count III arises, if at all, from the injury it sustained from the denial of its sign applications pursuant to Section 82–353(4)'s billboard prohibi-

---

**14.** As counsel for Defendant acknowledged at oral argument, noncommercial speech signs nevertheless would be subject to height, size, and other restrictions applicable to permanent onsite signs.

tion. Even assuming that Plaintiff had standing to assert a specific challenge to the Sign Ordinance's treatment of political signs and ground signs, however, the Court again notes that noncommercial signs are inherently onsite in nature. Thus there is no tension in the Ordinance between commercial and noncommercial speech with respect to political signs or ground signs containing noncommercial speech. Further, the size limitation on temporary political and campaign signs in the Sign Ordinance does not amount to more favorable treatment for commercial speech than noncommercial speech. *Cafe Erotica* is distinguishable on this issue from the facts of the instant case. Here, the Town does not limit the maximum size of all permanent political speech signs to a small percentage of the permissible size for commercial signs as St. Johns County did in *Cafe Erotica*. Rather, the Sign Ordinance restricts only those signs which are intended to be temporary, *i.e.*, with an intended duration of less than three months, and which pertain to elections or campaigns. Indeed, temporary signs such as those restricted in the Sign Ordinance to four square feet in copy area are exempt from the permitting requirement entirely, thus giving this type of speech more protection than commercial speech, not less.[15] The determination that Section 82–352(4) does not regulate noncommercial

---

**15.** Plaintiff states briefly in a footnote in its memorandum in opposition to Defendant's motion for summary judgment the Sign Ordinance's durational limit on political signs violates the holding of *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). In *City of Ladue* the Supreme Court struck down an ordinance which banned all residential signs other than those falling into one of ten exemptions. Applying strict scrutiny, the Court assumed the content-neutrality of the ordinance and acknowledged the City's interest in aesthetics and traffic safety. Given the special nature of "cause" speech emanating from private residential property, however, the Court found that ample alternative means for communicating the message did not exist. *City of Ladue*, 512 U.S. at 58, 114 S.Ct. 2038.

This issue has not been adequately briefed either by Plaintiff or by Defendant. Moreover, the Court concludes that Plaintiff does not have standing to assert this claim. Although the Court has assumed in addressing Count III that Plaintiff had standing to challenge the Sign Ordinance insofar as Plaintiff could demonstrate an injury-in-fact because its permit applications were denied under Section 82–352(4)'s ban on billboards, Plaintiff has demonstrated no such injury-in-fact with respect to provisions of the Sign Ordinance pertaining to temporary signs, including political signs.

Notwithstanding, the Court finds Plaintiff's citation of *City of Ladue* unavailing. Under the Town's Sign Ordinance all temporary signs are subject to the durational requirement. The application of the three-months restriction is not determined by reference to the content of the sign and thus is not impermissibly content-based. This Court has also acknowledged the Town's interests in aesthetics and safety. Further, the three months durational limitation is a narrowly tailored means of achieving the Town's goals interests in aesthetics and safety. *See Ward v. Rock Against Racism*, 491 U.S. 781, 796, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The limitations "need not be the least restrictive or least intrusive means" of serving the Town's goals. *Ward*, 491 U.S. at 798, 109 S.Ct. 2746. Rather, as is true here, the limitations are narrowly tailored if the Town's interest "would be achieved less effectively absent the regulation." *Id.* at 799, 109 S.Ct. 2746. In addition, the durational limitation "leave[s] open ample alternative channels of communication." *Id.* at 802, 109 S.Ct. 2746. For example, giving speeches, soliciting by telephone, hosting campaign receptions, and running radio, television, or print advertisements all are means of expression of political speech which would be unaffected by the three months durational limitation on temporary signs. In addition, placing bumper stickers on cars, wearing campaign buttons, distributing handbills, and putting signs in the windows of homes or businesses are other remaining avenues for expression of political speech.

speech also disposes of Plaintiff's argument that the Town's billboard ban violates the holding of *City of Cincinnati, supra,* because it allows certain onsite commercial signs but prohibits offsite commercial and noncommercial signs. As discussed, Eleventh Circuit precedent is clear that all noncommercial speech is onsite in nature and thus the prohibition against billboards does not implicate noncommercial signs.

For all of the foregoing reasons, assuming that Plaintiff has standing to bring the allegations contained in Count III, the Court concludes that Defendant is entitled to judgment as a matter of law.

### Counts VI and VII

 In light of the foregoing determinations that Plaintiff lacks standing to assert Counts II, III, IV, and V and that Count I (as well as Count III) fail on the merits, the Court need not address the parties' contentions arguments regarding the severability of the Sign Ordinance. For the same reason, the Court need not consider Plaintiff's takings claim.[16] Furthermore, as the Court has denied all of Plaintiff's claims, it also denies any demands for declaratory, monetary, or other relief. Finally, as the Court has dismissed all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over Plaintiff's state law claims, which shall be dismissed without prejudice. *See Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1288 (11th Cir.2002).

Accordingly, it is hereby ORDERED:

1. The Court GRANTS Defendant's motion for summary judgment (doc. 59 as corrected at 75). Plaintiff's federal claims as set forth in Counts I through V are DISMISSED with prejudice; its state claims contained therein are DISMISSED without prejudice. Count VI is DISMISSED with prejudice. Count VII is DISMISSED without prejudice.

2. Plaintiff's motion for partial summary judgment (doc. 58) is DENIED.

3. The Clerk is directed to ENTER judgment in favor of Defendant Town of Shalimar and to CLOSE this case. Plaintiff shall take nothing by this case and hence goes without day.

---

16. Moreover, although Defendant does not raise the issue, it appears that the takings claim is not ripe. Cases involving constitutional issues must be ripe in order for a federal court to have subject matter jurisdiction. *See Greenbriar Ltd. v. City of Alabaster,* 881 F.2d 1570, 1573 (11th Cir.1989). In order to be ripe, a takings claim requires surmounting two hurdles: (a) the "final decision" hurdle; and (b) the "just compensation" hurdle. *See Villas of Lake Jackson Ltd. v. Leon County,* 121 F.3d 610, 614 (11th Cir.1997). In order to meet the former requirement, an aggrieved party must appeal an administrative decision when the ordinance explicitly contains an appeal process. *See National Advertising Co. v. City of Miami,* 402 F.3d 1335 (11th Cir.2005). To meet the latter requirement, all state procedures for just compensation must be utilized. *See* *Reahard v. Lee County,* 30 F.3d 1412, 1416 (11th Cir.1994). Florida allows for an aggrieved party to pursue an inverse or reverse condemnation action so that a party may recover just compensation for a taking. *See id.* at 1417.

The record in this case indicates that Plaintiff appealed the denial of its sign permit applications and thus exhausted the "final decision hurdle." *Villas of Lake Jackson; see also National Advertising Co., supra.* There is nothing before the Court, however, which reflects that Plaintiff pursued any state procedure to receive just compensation. Absent Plaintiff's having pursued such procedures, its takings claim is not ripe. As the record therefore reflects that subject matter jurisdiction is lacking with respect to Count VII, it shall be dismissed without prejudice.