[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 9, 2006
THOMAS K. KAHN
CLERK

_____

No. 04-13210

_____

D. C. Docket No. 03-00023-CV-JTC-3

TANNER ADVERTISING GROUP, L.L.C.,

                                                          Plaintiff-Appellant,

versus

FAYETTE COUNTY, GEORGIA,

                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(June 9, 2006)**

Before EDMONDSON, Chief Judge, TJOFLAT, ANDERSON, BIRCH,
DUBINA, BLACK, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR
and KRAVITCH[*], Circuit Judges.

_____

[*]Senior Circuit Judge Kravitch elected to participate in this decision pursuant to 28 U.S.C. §
46(c).

PRYOR, Circuit Judge:

This appeal by Tanner Advertising Group, LLC, of an order that dismissed its challenge of the Fayette County Sign Ordinance of 1998 presents issues of mootness and standing. In 2003, Tanner applied for and was denied a sign permit because Tanner sought to construct signs that did not comply with section 1-43 of the Sign Ordinance. Fayette County, Ga., Sign Ordinance §§ 1-1–1-82 (1998) [hereinafter "1998 Sign Ordinance"]. Tanner moved permanently to enjoin the enforcement of section 1-43 and several other provisions of the 1998 Sign Ordinance as a violation of the freedom of speech protected by the First Amendment, as incorporated by the Fourteenth Amendment. The district court denied injunctive relief on the ground that section 1-43 was constitutional and Tanner lacked standing to challenge the other provisions of the 1998 Sign Ordinance. A panel of this court reversed and concluded that, notwithstanding the constitutionality of section 1-43, Tanner had standing, under the overbreadth doctrine, to challenge the other provisions of the 1998 Sign Ordinance. Tanner Adver. Group LLC v. Fayette County, 411 F.3d 1272 (11th Cir.), vacated, 429 F.3d 1012 (11th Cir. 2005). We vacated that decision and granted rehearing en banc to decide whether an injury under one provision of the 1998 Sign Ordinance confers standing to challenge other provisions. After we granted the petition,

2

Fayette County repealed the 1998 Sign Ordinance and enacted a comprehensive new Sign Ordinance. See Fayette County, Ga., Sign Ordinance §§ 1-1–6-1 (2005) [hereinafter "2005 Sign Ordinance"]. Because all but one of the challenges by Tanner were rendered moot by the 2005 Sign Ordinance and Tanner lacks standing to challenge the remaining provision, we now dismiss this appeal.

## I.  BACKGROUND

To explain the context of this appeal, we address three matters. We first review the operation of relevant provisions of the 1998 Sign Ordinance. We then review the litigation that led to this appeal. We then discuss the repeal of the 1998 Sign Ordinance and the enactment of the 2005 Sign Ordinance.

### A. The 1998 Sign Ordinance

The 1998 Sign Ordinance governed the permitting, location, size, and maintenance of all signs in Fayette County. The 1998 Sign Ordinance classified signs as either "on-premise signs" or "off-premise signs." See 1998 Sign Ordinance §§ 1-1, 1-6, 1-43. Tanner planned to construct only off-premise signs.

The 1998 Sign Ordinance defined an "off-premise sign" as "[a] sign that advertises a product, service, place, activity, person, institution, business or solicitation which is not carried out on the premises upon which the sign is located." Id. § 1-1. Permanent off-premise signs had to be "no more than three []

3

feet above ground level" and "no less than and no greater than two [] horizontal feet by two [] vertical feet in width." Id. § 1-43(B). The 1998 Sign Ordinance also required that a permanent off-premise sign "be brown with white lettering" and contain "information permanently legible and affixed" to the back of the sign. Id. § 1-43(C). A permanent off-premise sign could "communicate either a commercial or noncommercial message." Id. § 1-43(A). "A permit [was] required" for every off-premise sign. Id.

To obtain a permit for a permanent off-premise sign, a person was required to submit to the Zoning Administrator an application with proposed plans for the structure and location of the sign. Id. § 1-12. The Zoning Administrator reviewed the application to determine whether the sign complied with the 1998 Sign Ordinance, id. § 1-11(B)(1), and issued a permit "if the proposed structure [was] in compliance with the requirements of" the 1998 Sign Ordinance. The 1998 Sign Ordinance did not provide a time limit within which the Zoning Administrator had to grant or deny a permit. See id. §§ 1-11, 1-12.

The 1998 Sign Ordinance also prohibited the use of "Attention-getting devices." Id. § 1-5(A)(10). The 1998 Sign Ordinance stated, "No balloons . . . , streamers, lights, pennants, etc. shall be used to attract attention to any sign or business. This includes neon tubing or bare bulb lights encircling a window or

4

outlining the structure." Id. A sign could be illuminated internally or externally. Id. § 1-3. A sign was illuminated externally when it was "illuminated by an external light source directed primarily toward such sign. Such source cannot be a device that changes color, flashes, or alternates." Id.

Failure to comply with the 1998 Sign Ordinance was "a misdemeanor and the violator [would] be subject to a fine of up to $1,000.00 or imprisonment for up to twelve (12) months." Id. § 1-4(E). Each sign that violated the 1998 Sign Ordinance was "considered a separate violation when applying the penalt[ies]." Id. § 1-4(C). The 1998 Sign Ordinance also provided that "[s]hould any article, clause or provision of this ordinance be declared by a court of competent jurisdiction to be invalid such action shall not affect the validity of the ordinance as a whole." Id. § 1-82.

*B. The History of This Litigation*

Tanner is a Georgia limited liability company that buys and leases land to construct commercial and noncommercial signs. Tanner entered eight lease agreements with owners of real property to construct signs in commercial and industrial zones in Fayette County. On February 3, 2003, Tanner submitted eight applications for permits to construct signs that were 50 feet in height and 672 square feet in size. Tanner proposed to construct "Free-Standing," "Permanent

5

Off-Premise" signs with "two 14' x 48' faces . . . mounted in a V-Type configuration" that displayed "various noncommercial and commercial messages." Tanner marked the space on the applications for "External Illumination," but did not mark the space for "Internal Illumination." The eight applications were denied the same day that they were submitted on the ground that they failed to comply with section 1-43 of the 1998 Sign Ordinance.

On February 19, 2003, Tanner filed a complaint to enjoin the enforcement of the 1998 Sign Ordinance and recover damages. Tanner alleged that the 1998 Sign Ordinance violated the First Amendment of the United States Constitution as incorporated to the States through the Fourteenth Amendment because it "fails . . . to circumscribe the time in which government officials must grant or deny a permit," grants county officials "virtually limitless discretion in deciding whether a sign permit will be granted or denied," and is a content-based prior restraint of speech that is not narrowly tailored to serve a compelling governmental objective. Tanner attached a certified copy of the 1998 Sign Ordinance to the complaint.

On May 9, Tanner moved for a permanent injunction and argued that it would suffer irreparable harm from the 1998 Sign Ordinance because "[t]he County's enforcement of . . . its unconstitutional regulations has not only postponed, but has effectively foreclosed Tanner's ability to speak" in five ways.

First, Tanner argued that the 1998 Sign Ordinance "prevent[ed] the posting of most signs without prior approval of County officials," but "grant[ed] County officials unlimited time in which to approve or deny a permit." See id. §§ 1-11, 1-12. Second, Tanner contended that several provisions of the 1998 Sign Ordinance granted unbridled discretion to county officials "to either allow or prohibit signs based upon how the officials choose to define the sign." See id. §§ 1-3, 1-5(10), 1-5(11)(a)(2). Third, Tanner argued that the 1998 Sign Ordinance unconstitutionally restricted commercial speech because "[s]ection 1-44 of the regulations allows the County to be blanketed with a multitude of barely readable off-premise temporary signs that are exempt from permit requirements," but the city "provide[d] no findings or evidence whatsoever" that the provision furthers traffic safety and aesthetics. See id. §§ 1-43, 1-44. Fourth, Tanner argued that the 1998 Sign Ordinance completely banned "window signs, banners and flags . . . in residential districts." See id. §§ 1-51–1-55. Fifth, Tanner complained that the 1998 Sign Ordinance distinguished between commercial and noncommerical speech, but was not narrowly tailored to serve a compelling government interest. See id. §§ 1-70.

In support of its motion, Tanner filed a declaration from its member and representative, Michael Chordegian. Chordegian stated that "Tanner intends to utilize its proposed signs in Fayette County, Georgia[,] to communicate

7

commercial as well as political, ideological, religious and other noncommercial messages." Chordegian also stated that "[d]ue to the County's enforcement of the 1998 Sign Ordinance, Tanner has been deprived of its ability to post commercial and noncommercial messages on the requested signs. Such deprivation has cost Tanner substantial economic losses." Chordegian surmised that "[t]he County's enforcement of its unconstitutional Sign Ordinance has cost Tanner at least $3,000 per sign location, per month since the date the applications were submitted." Other than the declaration of Chordegian and the eight sign applications that were denied, Tanner did not submit any other evidence in support of the motion.

Fayette County filed two amendments to the 1998 Sign Ordinance as exhibits in its response against permanent injunction. The first amendment imposed a 30-day limit on the Zoning Administrator to grant or deny a permit. The second amendment provided that "[a]ppeals from the decision of the Zoning Administrator . . . shall be made to the Zoning Board of Appeals." It also provided that violations of the 1998 Sign Ordinance would result in fines of "no more than $1,000.00 or imprison[ment] for not more than sixty (60) days . . . . Each day a violation continues shall be deemed as a separate offense."

On February 13, 2004, the district court held a hearing regarding Tanner's motion for a permanent injunction. When the district court asked Tanner whether

8

the evidentiary record was complete, Tanner responded, "We think the record is abundantly clear. We are comfortable with the record." The district court then asked Tanner whether it had standing to challenge the entire 1998 Sign Ordinance under Granite State Outdoor Advertising v. City of Clearwater, 351 F.3d 1112 (11th Cir. 2003). Tanner stated that Clearwater "re-affirms and reinforces . . . overbreadth standing in this case."

Tanner argued that it suffered harm because it "is currently being denied the right to speak." Tanner reasoned that it had "direct standing . . . because [it] was denied a permit." Tanner contended that the denial of the permit established standing because it "was forced to go through an application process" that did not provide time limits for decisions and appeals. Tanner asserted that it had standing to challenge section 1-43 because it was denied sign permits under that provision. Tanner also contended that a provision of the 1998 Sign Ordinance that prohibited obscene material "could be applied to [Tanner] as soon as [it] put up this sign or any other sign in the county" because the provision "allowed the county officials to take down any sign that they don't approve of." See 1998 Sign Ordinance § 1-5(A)(11).

The district court denied the permanent injunction. The district court found that Clearwater "does not stand for the proposition that a plaintiff who establishes

9

an injury in fact under one provision of an ordinance may challenge the <u>entire</u> ordinance under the overbreadth doctrine." The district court reasoned that because "the only harm [Tanner] suffered was under § 1-43, [Tanner] has standing to challenge only § 1-43 as applied to [Tanner] and under the overbreadth doctrine under § 1-43 as applied to non-commercial speech." The district court then concluded that section 1-43, as applied to the permit applications of Tanner, was content-neutral and a valid time, place, and manner restriction. The district court also concluded that section 1-43 was not overbroad facially because it "does not substantially infringe the rights of others not party to this case." The district court dismissed the complaint filed by Tanner, including the request for damages.

Tanner appealed and argued that the district court erroneously applied a "narrow interpretation of overbreadth" in <u>Clearwater</u>. Although Tanner contended that <u>Clearwater</u> restricted standing only for plaintiffs who challenged content-neutral speech restrictions, Tanner argued that <u>Clearwater</u> was in conflict with the precedents of the Supreme Court and this Court. Tanner argued that the 1998 Sign Ordinance was content-based because it regulated "obscene or indecent material," <u>see</u> <u>id.</u> § 1-5, and favored commercial speech over noncommercial speech, <u>see</u> <u>id.</u> §§ 1-43, 1-44, 1-70(A). Tanner argued that "the District Court erred by failing to address the inherent conflicts within the Sign Ordinance that directly impact the

10

constitutionality of the regulations generally, and Section 1-43 specifically." See id. §§ 1-70(A), 1-61 (A)(1), (10).

A panel of this Court reversed and held that Tanner had standing to challenge facially all provisions of the 1998 Sign Ordinance. Tanner Adver. Group, LLC, 411 F.3d at 1277. The panel concluded that the overbreadth doctrine allowed plaintiffs to bring claims on behalf of third parties because "individual private citizens who are denied the opportunity to express themselves under an unconstitutional ordinance often find the barriers to legal redress to be too high." Id. at 1275. The panel also distinguished our decision in Clearwater on the ground that Clearwater "overlooked our past Eleventh Circuit precedent." Tanner Adver. Group, LLC, 411 F.3d at 1277. The panel explained, "Prior to Clearwater, if a . . . plaintiff met the Article III minimal requirements for standing under one provision of the ordinance, it was accepted that courts would grant standing for the plaintiff to also make a broad facial challenge to the constitutionality of the Ordinance as a whole." Id. at 1276 (citing Metromedia, Inc. v. San Diego, 453 U.S. 490, 504 n.11, 101 S. Ct. 2882, 2890 n.11 (1981) (plurality opinion); Granite State Outdoor Adver. v. City of St. Petersburg, 348 F.3d 1278 (11th Cir. 2003); Dimmitt v. City of Clearwater, 985 F.2d 1565 (11th Cir. 1993); National Adver. Co. v. City of Ft. Lauderdale, 934 F.2d 283 (11th Cir. 1991); Solomon v. City of Gainesville, 763

11

F.2d 1212 (11th Cir. 1985)).  The panel concluded that it was "compelled to follow our 'prior precedent' or 'earliest case' rule, uphold our decisions preceding Clearwater, and disregard the narrow approach to the overbreadth doctrine employed by the Clearwater court."  Tanner Adver. Group, LLC, 411 F.3d at 1277.  The panel reversed the denial of a permanent injunction and remanded for further proceedings.  Id. at 1278.

After the panel entered its decision, two other courts entered decisions about the 1998 Sign Ordinance.  First, on January 10, 2005, the federal district court for the Northern District of Georgia enjoined the enforcement of section 1-55 of the 1998 Sign Ordinance "as it related to political or campaign signs."  Maxwell v. Fayette County, No. 3:05-CV-081-JTC (N.D. Ga. Jan. 10, 2005).  Second, a Georgia court concluded that several provisions of the 1998 Sign Ordinance violated the United States and Georgia Constitutions.  Coffey v. Fayette County, No. 2004V-0754(E) (Sup. Ct. Fayette Co., Ga. July 20, 2005).  The court struck the phrase, "such sign may not be used to direct the public to a place or event at a location other than the location upon which the sign is posted," as unconstitutional when applied to noncommercial speech.  Id.  The court also struck several exemptions, see 1998 Sign Ordinance §§ 1-64, 1-69, 1-3, 1-67, 1-65, 1-55, but upheld all other provisions.  Id.

12

On November 1, 2005, we granted the petition for rehearing en banc filed by Fayette County and vacated the panel opinion. Tanner Adver. Group, LLC v. Fayette County, 429 F.3d 1012 (11th Cir. 2005).

*C. The 2005 Sign Ordinance*

On November 2, 2005, Fayette County repealed the 1998 Sign Ordinance and enacted a comprehensive new sign ordinance. The 2005 Sign Ordinance requires the Zoning Administrator to grant or deny a permit within thirty days. 2005 Sign Ordinance § 2-2. The 2005 Sign Ordinance does not distinguish between on-premise and off-premise signs or commercial and noncommercial speech. The new ordinance contains a specific definition of "obscene" material. Id. § 2-5(A)(8). There is no exemption for "special event" signs. It also does not prohibit window signs and flags in residential districts. Id. § 2-4. The only provision challenged by Tanner in the 1998 Sign Ordinance that remains substantially similar in the 2005 Sign Ordinance is the prohibition of "Attention-getting devices," which are defined as "balloons[] . . . neon tubing or bare bulb lights encircling a window or outlining a structure." Id. § 2-5(A)(7).

## II. STANDARD OF REVIEW

We review the question of mootness de novo. Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004) (quoting Christian Coal. of

13

Ala. v. Cole, 355 F.3d 1288, 1290 (11th Cir. 2004)).  We review standing determinations de novo.  Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir.), cert. denied, ___ U.S. ___, 126 S. Ct. 377 (2005).

### III. DISCUSSION

Tanner argues that several provisions of the 1998 Sign Ordinance violate the freedom of speech guaranteed by the First Amendment.  Tanner does not appeal the ruling of the district court that section 1-43 of the 1998 Sign Ordinance was constitutional as applied to its permit applications, but Tanner argues that the harm it suffered in the denial of its applications for sign permits allows it to challenge other provisions of the 1998 Sign Ordinance.  Tanner contends that it has standing to challenge (1) the procedural requirements of the 1998 Sign Ordinance, 1998 Sign Ordinance §§ 1-11, 1-12(B); (2) the provisions that favor "on-premise" noncommercial speech over "off-premise" noncommercial speech, id. §§ 1-43, 1-44, 1-55, 1-62, 1-70(A); (3) the provisions that allegedly grant unbridled discretion to County officials to define "special events," id. § 1-3, "Attention-getting devices," id. § 1-5(10), and "obscene" material, id. § 1-5(11)(a)(2); and (4) the prohibition on window signs in residential districts, see id. §§ 1-51–1-55.  Tanner also argues that the enactment of the 2005 Sign Ordinance does not render this appeal moot.

14

Tanner's arguments fail. With the exception of the challenge to the prohibition of "Attention-getting devices," the repeal of the 1998 Sign Ordinance and the enactment of the 2005 Sign Ordinance rendered moot the challenges brought by Tanner. 1998 Sign Ordinance § 1-5(10); 2005 Sign Ordinance § 2-5(A)(7). Tanner also lacks standing to challenge the prohibition of "Attention-getting devices." We exercise our discretion to review the issue of mootness first, followed by the issue of standing. See Arizonians for Official English v. Arizona, 520 U.S. 43, 66–67, 117 S. Ct. 1055, 1068 (1997).

### A. The 2005 Sign Ordinance Renders Moot Most of the Challenges by Tanner to the 1998 Sign Ordinance.

"Article III of the Constitution requires that there be a live case or controversy at the time that a federal court decides the case; it is not enough that there may have been a live case or controversy when the case" was filed. Burke v. Barnes, 479 U.S. 361, 363, 107 S. Ct. 734, 736 (1987). The doctrine of mootness provides that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S. Ct. 1202, 1209 (1980) (quoting Henry Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)). Ordinarily, "a challenge to the constitutionality of a statute is mooted by repeal of the statute." Coral Springs St. Sys., Inc., 371 F.3d at

15

1329.

Our discussion of whether this appeal is moot is divided in three parts. We first address the argument by Tanner that its request for damages in the complaint means that this appeal is not moot. We then consider Tanner's argument that it acquired, under Georgia law, vested property rights that remain enforceable. Because both arguments by Tanner fail, we then address which challenges were rendered moot by the adoption of the 2005 Sign Ordinance.

### 1. Tanner Waived Any Argument That Would Have Entitled Tanner to Damages.

Tanner argues that its appeal has not been rendered moot by the adoption of the 2005 Ordinance because its complaint included a request for damages. "[W]hen a plaintiff requests damages, as opposed to only declaratory or injunctive relief, changes to or repeal of the challenged ordinance may not necessarily moot the plaintiff's constitutional challenge to that ordinance." Crown Media LLC v. Gwinnett County, 380 F.3d 1317, 1325 (11th Cir. 2004). The problem for Tanner is that it failed to preserve any argument about a claim that would have entitled Tanner to damages.

Under the established law of this Circuit, "issues that clearly are not designated in the initial brief ordinarily are considered abandoned." Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995). "[T]he law is by now well settled in

16

this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." Access Now, Inc. v. Sw. Airlines Co., 385, F.3d 1324, 1330 (11th Cir. 2004). Although "briefs should be read liberally to ascertain the issues raised on appeal," Allstate Ins. Co. v. Swann, 27 F.3d 1539, 1542 (11th Cir. 1994), there was no mention in either the initial brief before the panel or the initial en banc brief submitted by Tanner of a claim that could give rise to the remedy of damages. Tanner did not argue that the district court erred when it concluded that section 1-43, which had been applied to deny its application for sign permits, was constitutional.

Tanner, in its complaint, requested damages based on the "substantial revenue on a monthly basis from the signs for which it has requested permits." The district court concluded that Tanner was not entitled to damages because section 1-43, as applied to deny Tanner a permit, was constitutional. In the initial brief before the panel, Tanner did not raise the argument that the decision of the district court regarding section 1-43 was erroneous, and Tanner did not argue that the denial of its applications for sign permits was unconstitutional.

Tanner appealed the dismissal of its facial challenges of other provisions of the 1998 Sign Ordinance, and Tanner requested that we "permanently enjoin the County's enforcement of its unconstitutional Sign Ordinance." The initial en banc

17

brief submitted by Tanner likewise was devoid of any argument about either the decision of the district court regarding section 1-43 or the denial of the eight applications of Tanner for sign permits. Because the damages that Tanner requested in its complaint were premised on the alleged unconstitutional denial of its applications for sign permits, and Tanner did not raise that issue on appeal, the record shows no remaining claims that could potentially entitle Tanner to damages.

Tanner did not and could not request damages for the facial challenges it raised in this appeal. Tanner argues on appeal that the enforcement of several provisions of the 1998 Sign Ordinance will deprive Tanner of the ability to construct other signs in the future. Apart from the denial of its sign permits under section 1-43, Tanner did not complain in the district court that the enforcement of the 1998 Sign Ordinance has caused it any harm. Tanner is not entitled to damages for the facial challenges of provisions of the 1998 Sign Ordinance because those provisions have not yet harmed Tanner. "[W]hatever the constitutional basis for § 1983 liability, such damages must always be designed 'to compensate injuries caused by the [constitutional] deprivation.'" Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 309, 106 S. Ct. 2537, 2544 (1986) (alterations in original) (citing Carey v. Piphus, 435 U.S. 247, 265, 98 S. Ct. 1042, 1053 (1978)).

A request for damages that is barred as a matter of law cannot save a case

from mootness. Arizonians for Official English, 520 U.S. at 69, 117 S. Ct. at 1069–70. In Arizonians for Official English, the Supreme Court reversed a decision of the Ninth Circuit, which had held that a request for damages against the State of Arizona meant that the appeal was not moot. Id. The Supreme Court concluded that, because the request for damages was barred by the Eleventh Amendment, the appeal was moot. The same result holds true here because the only issues presented by Tanner on appeal pertain to its facial challenges regarding prospective harm, which cannot give rise to the remedy of damages. See Memphis Cmty. Sch. Dist., 477 U.S. at 310, 106 S. Ct. at 2544 ("Section 1983 presupposes that damages that compensate for actual harm ordinarily suffice to deter constitutional violations.").

Tanner erroneously contends that "the fact [it] did not present a damages argument to this Court in its initial brief or En Banc Brief does not mean that [it] has waived those claims." Tanner argues that because it did not brief the issue of damages before the district court, it is excused from raising the request for damages before this Court. This argument fails.

The argument of Tanner is based on a misunderstanding of our scope of review. As a court of review, "an appellate court will not consider a legal issue or theory raised for the first time on appeal," United States v. S. Fabricating Co., 764

19

F.2d 780, 781 (11th Cir. 1985), but that truism did not preclude Tanner from arguing that the decision of the district court about section 1-43 as applied to Tanner was erroneous. "Under our caselaw, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue— even if properly preserved at trial—will be considered abandoned." Access Now, Inc., 385 F.3d at 1330 (quoting United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003)). Tanner preserved the issue of damages in the district court by complaining about the denial of its applications for sign permits and requesting damages as a remedy. When the district court denied the motion of Tanner for a permanent injunction and dismissed sua sponte the complaint of Tanner, including its request for damages, Tanner was obliged to raise on appeal any error in that dismissal regardless of whether the parties had had an opportunity to brief the alleged error in the district court.

In its briefs to the panel and en banc, Tanner raised arguments that pertained only to its facial challenges, which correspond to its requests for injunctive relief. Tanner abandoned any argument about the dismissal of its complaint that it suffered damages based on the denial of its applications for permits under section 1-43. That abandonment means that the argument of Tanner regarding the interplay of mootness and its request for damages fails.

## 2. Tanner Has No Vested Property Rights in Denied Permit Applications.

Tanner next argues that its appeal is not moot because it has a vested right to issuance of a sign permit because the 1998 Sign Ordinance was unconstitutional. A county "may not withhold an application on the basis of a void ordinance, and under certain circumstances, this can give rise to a vested right in the permit." Coral Springs St. Sys., Inc., 371 F.3d at 1334. Because it did not argue on appeal that section 1-43 was void as applied to its permit applications, Tanner also did not preserve any possible argument that it had a vested right to the issuance of a permit.

"[A] party's vested property rights constitute an enforceable entitlement to a permit or a sign unaffected by subsequent changes in sign ordinances and may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law." Crown Media LLC, 380 F.3d at 1325 (citing Coral Springs St. Sys., Inc., 371 F.3d at 1333). "[V]ested rights are not created easily. A 'vested right' has been defined as '[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent.'" Coral Springs St. Sys., Inc., 371 F.3d at 1333 (citing Black's Law Dictionary (7th ed. 1999)). "Whether a plaintiff has obtained vested property rights in a sign or permit is a question of state law." Crown Media LLC, 380 F.3d at 1325.

21

Under Georgia law, "vested rights to development arise when any of four conditions is shown to exist: (a) Right to Rely upon Building and other Permits Once Issued . . . (b) Right to Issuance of a Building Permit . . . (c) Right to Rely upon Approved Development Plan . . . (1) Formally approved . . . (2) Informally approved . . . (d) Right to Rely upon Official Assurances that a Building Permit Will Probably Issue." Union County v. CGP, Inc., 277 Ga. 349, 351 (2003) (citing WMM Props., Inc. v. Cobb County, 255 Ga. 436, 438–39 (1986)). "It is apparent . . . that all the bases enumerated in WMM Properties for the accrual of vested rights involve some species of estoppel." Union County, 277 Ga. at 351.

The County denied the sign permit applications submitted by Tanner because they did not comply with section 1-43 of the 1998 Sign Ordinance. The district court concluded that section 1-43, as applied to those applications, was a reasonable time, place, and manner restriction. Tanner failed to argue on appeal that section 1-43, as applied to its applications, was unconstitutional. Tanner instead argued that the denial of its applications allowed it to challenge other provisions of the 1998 Sign Ordinance that might affect its applications for permits in the future. Because Tanner did not raise any argument about the constitutionality of section 1-43 as applied to the permits it sought, Tanner cannot now argue that section 1-43 is void or that Tanner has a vested right in the permits

22

that were denied based on section 1-43.

Because Tanner failed to raise the constitutionality of section 1-43 as applied to its permits, Tanner had no vested property rights in sign permit applications that failed to comply with the constitutional proscriptions in the 1998 Sign Ordinance. The Supreme Court of Georgia has explained, "A permit for a use prohibited by a valid zoning ordinance, regulation, or restriction is void, of no effect, and subject to revocation." Corey Outdoor Adver., Inc. v. Bd. of Zoning Adjustments, 254 Ga. 221, 226 (1985) (citation omitted). In Corey, an outdoor advertising company was erroneously issued a permit to construct a sign that violated provisions of the city zoning ordinance. The Georgia Supreme Court stated that the zoning ordinance was valid and "a permit issued for either an illegal use or an illegal nonconforming use is void; . . . it does not vest constitutional rights." Id. at 227. "[T]he law in Georgia, like the rule in nearly all jurisdictions, supports the conclusion that a permit for an illegal use is void and vests no property rights." Id. Tanner has no vested property rights in sign applications that failed to comply with the valid restrictions in the 1998 Sign Ordinance.

Contrary to the argument of Tanner, our decision in Crown Media is inapposite to this appeal. We concluded in Crown Media that a sign company had a vested property right in sign permits issued by the County under a sign ordinance

23

that was amended after the issuance of the permits. Crown Media, 380 F.3d at 1329. A key fact that supported our conclusion in that decision was "that Crown Media applied for and actually obtained permits." Id. at 1328 (emphasis added). We stated that because "Crown Media's property rights in its sign would have vested under Georgia law[,] any subsequently enacted sign ordinance . . . would be unenforceable against Crown Media's pre-existing, legally constructed sign." Id. at 1329. The signs constructed in Crown Media were a conforming use under the sign ordinance. We did not consider whether an applicant has a vested property right in sign permits that were denied under a challenged ordinance.

The reliance by Tanner on Tilley Properties, Inc. v. Barstow County is also unavailing. 261 Ga. 153 (1991). The Georgia Supreme Court in Tilley addressed whether owners of land that was zoned agricultural were entitled to a certificate of zoning compliance to engage in mining activities. 261 Ga. at 153. The owners argued that "the [agricultural] zoning ordinance is null and void because it was not enacted in compliance with the Zoning Procedures Law (ZPL), O.C.G.A. § 36-66-1 et seq." Id. "The Georgia Supreme Court concluded that at the time the property owner applied for its land use certificate, the agricultural zoning ordinance restricting its property to agricultural purposes was invalid because of defects in its enactment." Crown Media LLC, 380 F.3d at 1328 n.23 (citing Tilley

24

Props., Inc., 401 S.E.2d at 529). "While Tilley teaches that the validity of a zoning ordinance is relevant to whether a property owner is entitled to a requested certificate, it is important to note that Tilley did not address vested property rights in the face of a subsequent, new ordinance." Id.

Tanner also erroneously relies on Recycle & Recover, Inc. v. Georgia Board of Natural Resources, 466 S.E.2d 197 (Ga. 1996), and WMM Properties, Inc., 339 S.E.2d 252, for the proposition that "[a] landowner has a right, enforceable by mandamus, to be issued a building permit in accordance with zoning regulations as such regulations exist at the time a proper application for building permit is submitted to the proper authority." WMM Props., Inc., 339 S.E.2d at 254–55. These decisions are inapposite because they involved challenges to ordinances that were enacted after the plaintiffs had received permits. See Recycle & Recover, Inc., 466 S.E.2d at 197 ("The Georgia Board of Natural Resources [] issued a permit to Recycle & Recover, Inc.[,] for the construction and operation of a solid waste treatment facility."); WMM Props., Inc., 339 S.E.2d at 253 ("[B]efore any purchase, [WMM] obtained a certification of zoning from the Cobb County Planning Commission."). Tanner never received a sign permit that was superseded by the enactment of an ordinance.

Tanner has no vested property right to construct its signs. Tanner failed to

25

argue on appeal that section 1-43, upon which Tanner was denied a permit, is unconstitutional as applied to its permit applications, and Tanner was never granted a permit. We next consider which challenges were rendered moot by the enactment of the 2005 Sign Ordinance.

   3. The Amendment Renders Moot All but One of the Challenges by Tanner.

Tanner complains about four aspects of the 1998 Sign Ordinance. Tanner appealed the denial of a permanent injunction because provisions of the 1998 Sign Ordinance (1) lacked procedural safeguards, see 1998 Sign Ordinance §§ 1-11, 1-12(B); (2) favored "on-premise" noncommercial speech over "off-premise" noncommercial speech, id. §§ 1-43, 1-44, 1-55, 1-62, 1-70(A); (3) allegedly granted unbridled discretion to County officials to define "special events," "Attention-getting devices," and "obscene" material, id. §§ 1-3, 1-5(10), 1-5(11)(a)(2); and (4) prohibited window signs in residential districts, see id. §§ 1-51–1-55. With the exception of the prohibition of "Attention-getting devices," the 2005 Sign Ordinance renders these challenges moot.

"This Court and the Supreme Court have repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots legal challenges to the legitimacy of the repealed legislation." Nat'l Adver. Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005), cert. denied, 126 S. Ct. 1318 (2006). A

"superseding statute or regulation moots a case . . . to the extent that it removes challenged features of the prior law." Coal. for the Abolition on Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000). If the repeal is such that "the allegedly unconstitutional portions of the [challenged] ordinance no longer exist," the appeal is rendered moot because "any decision we would render would clearly constitute an impermissible advisory opinion." Nat'l Adver. Co., 402 F.3d at 1335.

The 2005 Sign Ordinance "remove[d] challenged features of the" 1998 Sign Ordinance. Coal. for the Abolition on Marijuana Prohibition, 219 F.3d at 1310. Tanner's complaint that the 1998 Sign Ordinance lacks time limits for decisions and appeals is no longer "live," Burke, 479 U.S. at 363, 107 S. Ct. at 736, because the 2005 Sign Ordinance requires the Zoning Administrator to grant or deny a permit within thirty days and provides that applicants may appeal to the Zoning Board of Appeals, 2005 Sign Ordinance § 2-1(B). Tanner's complaint that the 1998 Sign Ordinance unconstitutionally favored "on-premise" noncommercial speech over "off-premise" noncommercial speech, see 1998 Sign Ordinance §§ 1-43, 1-44, 1-55, 1-70(A), is moot because the 2005 Sign Ordinance eliminated all distinctions between "off-premise" and "on-premise" speech. Tanner's complaint that the definitions of "obscene material" and "special events" granted unbridled

27

discretion to the Zoning Administrator to exempt "special events" and define "obscene" material is also moot. See 1998 Sign Ordinance §§ 1-3, 1-5(11)(a)(2). The 2005 Sign Ordinance does not exempt "special events" and it provides a lengthy definition of the term "obscene." See 1998 Sign Ordinance § 1-5(11)(a)(2); see generally 2005 Sign Ordinance § 2-5(A)(8). Tanner's complaint that the restrictions in residential areas under the 1998 Sign Ordinance "are so sweeping that even the most basic forms of signs . . . are prohibited or severely limited" because they prohibit window signs, flags, and banners, 1998 Sign Ordinance § 1-51– 1-55, is no longer live, because the 2005 Sign Ordinance allows window signs, flags, door signs, and temporary signs, 2005 Sign Ordinance § 2-4.

All that is left is Tanner's challenge to the prohibition on "Attention-getting devices." Tanner challenged the prohibition on "Attention-getting devices," which the 1998 Sign Ordinance described as "balloons [], streamers, lights, pennants, . . . neon tubing, [and] bare bulb lights encircling a window" on the ground that the prohibition grants unbridled discretion to county officials to define an "Attention-getting device." 1998 Sign Ordinance § 1-5(10). The 2005 Sign Ordinance continues to prohibit "Attention-getting devices, including but not limited to balloons, . . . all inflatable air signs and lights . . . , [and] neon tubing or bare bulb

28

lights encircling a window or outlining the structure." 2005 Sign Ordinance § 2-5(A)(7). Although the continuation of this prohibition means that this lone aspect of the complaint of Tanner is not moot, a serious question remains about whether the challenge by Tanner presents an actual case or controversy. We next consider whether Tanner has standing to challenge the prohibition against "Attention-Getting Devices." See 1998 Sign Ordinance § 1-5(10); 2005 Sign Ordinance § 2-5(A)(7).

*B. Tanner Lacks Standing to Challenge the Prohibition Against "Attention-Getting Devices."*

The Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). A plaintiff who invokes the jurisdiction of a federal court bears the burden to show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." Clearwater, 351 F.3d at 1116. Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the

29

burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561, 112 S. Ct. at 2136.

The evidentiary record does not establish that Tanner was affected by the provision that allegedly grants unbridled discretion to prohibit "Attention-getting devices" because the permit applications submitted by Tanner do not establish that this provision pertains to Tanner. See Meese v. Keene, 481 U.S. 465, 473–74, 107 S. Ct. 1862, 1867–68 (1987) (finding a statute threatened a cognizable injury where the plaintiff "submitted detailed affidavits" and "views of an experienced political analyst" that were "uncontradicted" to establish reputational harm from enforcement). Tanner proposed to construct signs that "will contain two 14' x 48' faces that will be mounted in a V-Type configuration." This description does not suggest that the signs proposed by Tanner would use "Attention-getting devices." See id. Although Tanner marked that its signs would be externally illuminated, external illumination "cannot be a device that changes color, flashes, or alternates." 2005 Sign Ordinance § 1-5(10). The record is devoid of any evidence that Tanner ever intended to use "Attention-getting devices" in Fayette County.

The permit applications do not establish that Tanner had "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." Pittman v. Cole, 267 F.3d 1269, 1283 (11th Cir. 2001)

(quoting Wilson v. State Bar of Ga., 132 F.3d 1422, 1428 (11th Cir. 1998)). "Standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'" FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231, 110 S. Ct. 596, 608 (1990)(citations omitted), overruled in part on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC, 541 U.S. 774, 124 S. Ct. 2219 (2004). The record fails to establish that Tanner "has sustained or is immediately in danger of sustaining a direct injury" from the prohibition on "Attention-getting devices." Laird v. Tatum, 408 U.S. 1, 13, 92 S. Ct. 2318, 2325 (1972). Tanner lacks standing to challenge this provision.

Because Tanner lacks standing to challenge this provision of the 1998 Sign Ordinance, we need not address the overbreadth argument of Tanner that standing under one provision confers standing to challenge all provisions of the Ordinance. The 2005 Sign Ordinance rendered moot all challenges but one, and Tanner lacks standing to challenge that lone provision. No challenges to the 1998 Sign Ordinance remain for Tanner to premise its overbreadth challenge. We leave that issue for another day.

## IV. CONCLUSION

The appeal by Tanner of the denial of motion for a permanent injunction is **DISMISSED.**

31

BIRCH, Circuit Judge, specially concurring:

I write in concurrence with the majority opinion to clarify a point that I had anticipated would be addressed in this en banc hearing. While the panel opinion in this case, Tanner Advertising Group, L.L.C. v. Fayette County, 411 F.3d 1272 (11th Cir.) ("Tanner"), vacated, 429 F.3d 1012 (11th Cir. 2005), is no longer precedential, as noted in the majority opinion at p. 12, that decision opined that:

> Prior to [Granite State Outdoor Adver., Inc. v. City of Clearwater] 351 F.3d 1112 (11th Cir. 2003) ("Clearwater")] if a . . . plaintiff met the Article III minimal requirements for standing under one provision of the ordinance, it was accepted that courts would grant standing for the plaintiff to also make a broad facial challenge to the constitutionality of the Ordinance as a whole. See, e.g., Metromedia[, Inc. v. City of San Diego, 453 U.S. 490, 505 n.11, 101 S. Ct. 2882, 2891 n.11 (1981)]; Granite State Outdoor Adver. v. City of St. Petersburg, 348 F.3d 1278 (11th Cir. 2003) ("St. Petersburg"); Dimmitt v. City of Clearwater, 985 F.2d 1565 (11th Cir. 1993); National Adver. Co. v. City of Fort Lauderdale, 934 F.2d 283 (11th Cir. 1991) ("National"); Solomon v. City of Gainesville, 763 F.2d 1212 (11th Cir. 1985).
>
> * * * *
>
> In light of the strong precedent from the Supreme Court and this Circuit concerning the doctrine of overbreadth which preceded the Clearwater decision, we are compelled to follow our "prior precedent" or "earliest case"[1] rule and uphold our decisions preceding Clearwater and disregard the narrow approach to the overbreadth doctrine

[1] "A prior panel decision of this Court is binding on subsequent panels and can be overturned only by the Court sitting en banc . . . . When faced with an intra-circuit split we must apply the 'earliest case' rule, . . . a panel should look to the line of authority containing the earliest case, because a decision of a prior panel cannot be overturned by a later panel." Morrison v. Amway Corp., 323 F.3d 920, 929 (11th Cir. 2003) (internal quotations and citations omitted).

32

employed by the Clearwater court.

Tanner, 411 F.3d at 1276-77.

Given that language, albeit expressed in a now vacated opinion of no precedential force, I deem it necessary to take issue with such a conclusion. As I will demonstrate below, Clearwater did not depart from prior precedent and, except to the extent modified by this en banc decision, remains the law of this Circuit. To outline my position on this issue, I will (1) review Supreme Court precedent on the overbreadth doctrine, including those cases cited by the Tanner panel opinion in support of its determination to refuse to follow Clearwater; (2) review Eleventh Circuit precedent on the overbreadth doctrine, including those cases cited by the Tanner panel opinion; and (3) note other jurisprudential considerations which impact my conclusion in this case.

A. Supreme Court Precedent on the Overbreadth Doctrine

In order to have standing to bring a claim, a litigant must satisfy (1) Article III's "case and controversy" requirements, namely that: (a) the litigant suffered an injury in fact that is concrete and particularized; (b) there is a causal connection between the injury and the challenged conduct; and (c) the injury can be redressed by a favorable decision; and (2) certain sub-constitutional or "prudential" doctrines established by courts. See Bennett v. Spear, 520 U.S. 154, 162, 117 S. Ct. 1154,

33

1161 (1997). One of these prudential doctrines is that a litigant may only assert his or her own rights and may not argue claims that could have been asserted by third parties not before the court. Allen v. Wright, 468 U.S. 737, 751, 104 S. Ct. 3315, 3324 (1984). While the Article III standing requirements constitute an "irreducible constitutional minimum" which cannot be altered, the prudential standards are more malleable and may be relaxed by courts in certain situations. See Bennett, 520 U.S. at 162, 117 S. Ct. at 1161. One exception is the overbreadth doctrine.

The overbreadth doctrine is an exception to the prudential doctrine recited by Allen, which says that a litigant, who has been injured by a statute as it was applied to him, may also challenge the statute facially on First Amendment grounds. See Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 634, 100 S. Ct. 826, 834-35 (1980). This is because the Court has recognized that individual citizens whose First Amendment rights have been violated may simply refrain from speech rather than engage in the costly endeavor of challenging a statute. See Virginia v. Hicks, 539 U.S. 113, 119-20, 123 S. Ct. 2191, 2196-97 (2003). Accordingly, courts allow a party to make a broad facial challenge to a statutory provision under the overbreadth doctrine to ensure that unconstitutional burdens on speech are eliminated. The overbreadth doctrine, however, does not relieve a litigant of demonstrating, as required by Article III, that he suffered an

34

injury in fact.  See Bischoff v. Osceola County, 222 F.3d 874, 884 (11th Cir. 2000) ("[E]ven under the more lenient requirements for standing applicable to First Amendment overbreadth challenges, it still remains the law that plaintiffs must establish that they have suffered some injury in fact as a result of the defendant's actions.") (citing Virginia v. Am. Booksellers Assoc. Inc., 484 U.S. 383, 392,  108 S. Ct. 636, 642 (1988)).

While some ambiguity can be read into this last quotation from Bischoff, no Supreme Court case has interpreted the overbreadth doctrine so broadly as the panel did in Tanner.  In other words, no Supreme Court case has allowed a litigant to challenge statutory provisions under which it was not injured based on the overbreadth doctrine.  For example, in Schaumburg, a litigant claimed that § 22-20(g) of a local ordinance violated the First Amendment after being denied a certain permit pursuant to that code provision.  444 U.S. at 624-25, 100 S. Ct. at 829-30.  Under the overbreadth doctrine, the Court allowed the litigant to challenge the statutory provision facially.  Id. at 634.  In sum, the plaintiff was injured under § 22-20(g) and the Court heard only his challenge to § 22-20(g).  The Court did not entertain challenges to other related provisions.  Likewise, in Secretary of State v. Joseph H. Munson Co., the State of Maryland had threatened to sue a for-profit company under § 103D of the Maryland Code.  467 U.S. 947, 951, 104 S. Ct.

35

2839, 2844 (1984). Invoking the overbreadth doctrine, the for-profit corporation challenged the facial constitutionality of the statute, which was designed to regulate non-profits. Id. at 956-58, 104 S. Ct. at 2847-48. The Court's analysis did not venture beyond the overbreadth challenge to § 103D, the provision under which the for-profit was injured. See id. at 970, 104 S. Ct. at 2854. Finally, in American Booksellers Association, the Court allowed a bookstore to mount a facial challenge to Va. Code Ann. § 18.2-391 only after the bookstore had demonstrated an injury, which was the "well-founded fear that the law would be enforced against them." 484 U.S. at 393, 108 S. Ct. at 643.

In support of its sweeping view of the overbreadth doctrine, the Tanner panel opinion cited City of Littleton v. Z. J. Gifts D-4, L.L.C., 541 U.S. 774, 124 S. Ct. 2219 (2004), for the proposition that "the Court did not limit the plaintiff's facial standing to the specific provision that rendered the plaintiff's [action] unlawful." Tanner, 411 F.3d at 1277. Littleton is inapposite because it is not an overbreadth standing case, and the Court granted certiorari to address only whether a licensing scheme met the First Amendment's requirement of prompt judicial review. Littleton, 541 U.S. at 776, 124 S. Ct. at 2221. As the Tanner panel opinion conceded, "the Court permitted the plaintiff to make a facial challenge without ever even discussing the plaintiff's individual injury." Tanner, 411 F.3d at

36

1277. Because the issues of standing and overbreadth were not discussed in Littleton, that case has no bearing on those issues. See Hagans v. Lavine, 415 U.S. 528, 536 n.5, 94 S. Ct. 1372, 1378 n.5 (1974) ("[When] questions of jurisdiction have been passed on in prior decisions sub silentio, this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us."); cf. Texas v. Cobb, 532 U.S. 162, 169, 121 S. Ct. 1335, 1341 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."). Littleton did modify the Court's previous holding in FW/PBS, Inc. v. City of Dallas, 493 U.S. 214, 110 S. Ct. 596 (1990), regarding "special judicial review rules" for the denial of a business license. Littleton, 541 U.S. at 781-72, 124 S. Ct. at 2224. However, Littleton did not disturb FW/PBS's holding that courts must determine whether plaintiffs have standing under every provision that they wish to challenge. See generally id. In FW/PBS, Inc., while the Court concluded that plaintiffs had standing to challenge certain provisions in an ordinance, the Court refused to reach the merits of challenges to other provisions within the same ordinance "because petitioners ha[d] failed to show they have standing to challenge them." 493 U.S. at 230-31, 110 S. Ct at 607-08; see also McConnell v. FEC, 540 U.S. 93, 154-60, 224-233, 124 S. Ct. 619, 666-70, 707-12 (2003) (allowing challenges, including an overbreadth challenge, to certain

37

provisions in the Bipartisan Campaign Reform Act of 2002, but concluding that plaintiffs lacked standing to challenge other provisions).

In addition, the Tanner panel opinion cited a footnote in Metromedia, 453 U.S. at 504 n.11, 101 S. Ct. at 2890 n.11, for the proposition that standing under one provision suffices for standing under "the Ordinance as a whole." Tanner, 411 F.3d at 1276. Although the footnote discusses the overbreadth doctrine, the main text of the case recites that the litigant was engaged in both commercial as well as noncommercial expressive speech, and therefore the overbreadth doctrine was inapplicable because the litigant could mount a facial challenge without invoking the doctrine. Metromedia, 453 U.S. at 503-04, 101 S. Ct. at 2890-91. Notwithstanding the fact that Metromedia is a fractured, plurality opinion of dubious precedential value, see Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1262 n.10 (11th Cir. 2005), the case is inapposite to the Tanner panel opinion's claim that the overbreadth doctrine allows litigants to challenge statutory provisions under which they have not been injured.

Accordingly, in the Supreme Court cases that have addressed the overbreadth doctrine and its relationship to Article III standing, litigants were allowed to mount facial (as opposed to strictly "as applied") challenges only to statutory provisions under which they had been injured. The Court has not used

the overbreadth doctrine to allow litigants to challenge related statutory provisions under which it concluded that the litigants had not been injured.

B.  Eleventh Circuit Precedent on the Overbreadth Doctrine

The Eleventh Circuit cases cited by the Tanner panel opinion either (1) support the conclusion in Clearwater or (2) do not stand for the proposition that a litigant may challenge statutory provisions under which he has not been injured. See Café Erotica of Fla., Inc. v. St. Johns County, 360 F.3d 1274, 1278 & nn. 3-5 (11th Cir. 2004) (limiting constitutional analysis under overbreadth doctrine to "Sections 7.00.01, 7.00.08, and 7.03.01 of Ordinance 99-51" because plaintiff was allegedly injured under those sections); Solantic, 410 F.3d at 1252-54 (limiting constitutional analysis to "the relevant provisions of the Neptune Beach sign code," which the City indicated Solantic had violated); St. Petersburg, 348 F.3d at 1280 & n.2, 1282-83 (limiting the First Amendment inquiry to the several ordinance provisions under which the litigant was injured); Dimmitt, 985 F.2d at 1571 (citing the overbreadth doctrine to allow a litigant to challenge facially Fla. Code §§ 134.008(18), 134.013(a) when the litigant was denied a permit pursuant to that code section); National, 934 F.2d at 285-86 (allowing a litigant to challenge facially municipal code provisions because the litigant "ha[d] a commercial interest in the speech regulated" and remanding to determine whether provisions were

severable from entire code); Solomon, 763 F.2d at 1213-15 (finding that the litigant had standing under the overbreadth doctrine to challenge facially Gainesville code § 29-100(b)(2) when the city indicated that it would prosecute the litigant based on his violation of the statute).

To elaborate further, the two circuit opinions cited by the Tanner panel opinion that post-date the decision in Clearwater, and thereby do not implicate the prior precedent rule, are consonant with Clearwater's holding. Although the opinion in Café Erotica, "tak[es] into account other provisions" than those under which the plaintiff was injured, 360 F.3d at 1278, we did not grant the plaintiffs standing to challenge those provisions. Instead, we expressly limited review to the three provisions that the district court focused on because the plaintiffs were injured under those provisions. See id. ("[W]e consider only the constitutionality of Ordinance 99-51 . . . . [s]pecifically, we consider appellees' facial challenges to sections 7.00.01, 7.00.08, and 7.03.01 of Ordinance 99-51.") (emphasis added). Solantic also specifically limited its review and only considered the entire sign code when deciding whether the unconstitutional sections under which the plaintiff was injured could be severed from the code. 410 F.3d at 1268-69 (concluding that, because "exemptions [were] not severable from the remainder of the ordinance, we [were] therefore required to find the sign code unconstitutional").

40

More importantly, several of the cases that pre-date <u>Clearwater</u>, and thereby

implicate the prior precedent rule, demonstrate that standing to make a facial

challenge to a particular provision under the overbreadth doctrine does not give the

plaintiff standing to challenge other sections, or the entire statutory scheme, if the

plaintiff was not injured thereunder.  For example, in <u>St. Petersburg</u>, we

specifically noted that we were not "invalidat[ing] the sign ordinance in its

entirety" and that we would not "address hypothetical constitutional violations in

the abstract" which did not affect the plaintiff.  <u>See</u> <u>St. Petersburg</u>, 348 F.3d at

1282-83.  While there is some language in the opinion which perhaps suggests the

panel would have allowed standing to challenge the entire statute,[2] it is more

important to look at what the panel did.  The plaintiff was denied a permit under §

16-692(e) and was thereby injured under that provision.  <u>Id.</u> at 1280.  In

challenging the statute, the plaintiff argued that § 16-692(e) was unconstitutional

because there was no time limit on when the municipality had to act on a permit

application.  <u>Id.</u> at 1281.  While we "affirm[ed] without discussion" the district

court's finding that three particular provisions were unconstitutional, <u>see</u> <u>id.</u> at

1280 & n.1, we found that § 16-692(e) was constitutional, and then expressly

_____

[2] For example, the panel expressly disclaims that it is invalidating the ordinance in its
entirety, <u>see</u> <u>id.</u> at 1283, which suggests (at best) that the plaintiff may have had standing to
challenge the ordinance in its entirety.

41

disclaimed that we were reviewing or invalidating any other provisions because the district court made no findings of fact that the plaintiff was injured under those provisions. See id. at 1283. Thus, looking at what the St. Petersburg panel actually did and held, our analysis under the overbreadth doctrine was limited to a facial challenge of the permit provision under which the plaintiff was injured.

In Dimmitt, we invalidated both § 134.013(a) (requiring a permit to erect a sign) and § 134.008(18) (exempting display of some flags from permit requirement). 985 F.2d at 1571-73. It is clear, however, that the plaintiff was injured under both sections: He was denied a permit under § 134.013(a) on the grounds that his display was not part of the exemptions stated in § 134.008(18). Id. Thus, Dimmitt supports the position that a litigant should only be allowed to challenge the statutory provisions under which he was injured.

While National also suffers from suggestive language indicating that the litigant had standing to challenge the entire code, closer inspection shows that National does not stand for the sweeping view of overbreadth the Tanner panel opinion espouses. In National, after a cursory finding that a litigant had standing under the overbreadth doctrine to challenge facially certain statutory provisions, our court remanded the case back to district court to determine whether these provisions were constitutional and then to determine if the unconstitutional

provisions, if any, were severable "from the remainder of the sign code." See 934 F.2d at 286. National never expressly concluded that the litigant had standing to challenge those provisions under which it had not been injured. See generally id.

Accordingly, the Tanner panel opinion's assertion that Clearwater broke with prior Eleventh Circuit precedent is not supported by the cases the Tanner panel opinion cited. In Clearwater, the panel found that, although the overbreadth doctrine permitted a facial challenge to § 3-1806.B.1 of the Clearwater Code because the plaintiff had been injured under that provision, the plaintiff could not challenge the constitutionality of § 4 of the Code because it had sustained no injury under any provision of that section. 351 F.3d at 1117. Clearwater's holding that the overbreadth doctrine only allows a facial challenge to the provision under which the litigant has been injured, as required by Article III, is thus consistent with the holdings in Café Erotica, Solantic, St. Petersburg, Dimmitt, National, and Solomon. Moreover, Clearwater follows circuit precedent that pre-dates the cases cited by the Tanner panel opinion. See, e.g., FEC v. Lance, 635 F.2d 1132, 1140-41 (5th Cir. Jan. 1981) (en banc) (disallowing overbreadth challenge to various prohibitions within a single section, 2 U.S.C. § 441b, that were not applicable to the plaintiff, and concluding that plaintiff "ha[d] standing to challenge section 441b only as it prohibits [the two activities applicable to the plaintiff]").

C.  Other Jurisprudential Considerations

In addition to finding support in Supreme Court and Eleventh Circuit precedent, the decision in Clearwater is supported by two other jurisprudential considerations.

First, the Article III requirement of an injury in fact is an "irreducible constitutional minimum," whereas the overbreadth doctrine is an exception to a prudential, court-made standing doctrine.  See Bennett, 520 U.S. at 162, 117 S. Ct. at 1161.  Because a prudential doctrine cannot be allowed to trump a constitutional requirement, the Tanner panel opinion's expansion of the overbreadth doctrine, which eviscerates the injury-in-fact requirement, cannot be permitted.[3]

Second, the Tanner panel opinion eviscerates the jurisprudential engagement in severability analysis.  The typical procedure for constitutional challenges to a statutory provision is to: (1) test the provision for constitutionality; and (2) if it is found unconstitutional, determine whether the constitutionally offensive provision can be severed from the rest of the statute.  See New York v. United States, 505 U.S. 144, 186, 112 S. Ct. 2408, 2434 (1992).  Courts engage in severability

---

[3]  To be sure, by abrogating the prudential standing limitations, legislative actions and judicial exceptions to prudential limitations (including overbreadth) may enable plaintiffs to sue to the full extent allowed by Article III.  See, e.g., Bennett, 520 U.S. at 165, 117 S. Ct. at 1162-63 (concluding that a legislative act expanded standing "to the full extent permitted under Article III").  However, such actions cannot empower plaintiffs to sue beyond the full extent allowed by Article III.  Thus, any inquiry into prudential standing should only be undertaken after the limit of a litigant's Article III standing has been identified.

analysis out of respect for separation of powers, i.e., so that constitutional provisions enacted by the legislature are not overturned needlessly.  The Tanner panel opinion, by purporting to expand the purview of the court's constitutionality analysis to an entire code or ordinance even if the plaintiff was injured under one narrow provision, eliminates the need to engage in the severability analysis as required by New York.

D.  Conclusion

In sum, the Tanner panel opinion's conclusion that the overbreadth doctrine allows a litigant who was only injured under § A-1 of a statute also to challenge § A-2 or even all of § A of a statute is incorrect, as is its conclusion that Clearwater represented a departure from prior Eleventh Circuit precedent.  While Article III determines which statutory provisions may be challenged (i.e., the ones under which the plaintiff was injured), the overbreadth doctrine determines what arguments the plaintiff can make about those provisions (i.e., "as applied" or facial unconstitutionality).[4]

---

[4]Loose and suggestive language has been rather commonplace in this area and has provided enterprising plaintiffs with some fodder to challenge statutory provisions under which they have not suffered an injury.  See, e.g., Cafe Erotica, 360 F.3d at 1281 (Even though we considered only challenges to sections 7.00.01, 7.00.08, and 7.03.01 of Ordinance 99-51, we concluded that "[b]oth appellees have standing to challenge Ordinance 99-51."); Dimmitt, 985 F.2d at 1573 (While we only reviewed  particular portions of a sign ordinance, we broadly stated that "[w]e must invalidate the sign ordinance as facially unconstitutional.").  Compare St. Petersburg, 348 F.3d at 1280 n.1 (noting that the district court invalidated three specific provisions and "found the remaining text to be constitutionally sound"), with id. at 1281 ("The

While society may be helped by increased judicial review of statutes that affect speech, society will not be better served in the long-run under an expansive application of the overbreadth doctrine. Article III injury-in-fact requirements are designed to provide the court with the most vigorous litigant who has the incentive to accurately present the court with the appropriate issues and arguments. A litigant who has not been injured under a particular provision may not have the appropriate incentive or understanding of the provision's effects to litigate fully those provisions. Allowing such a challenge may result in precedent being established that actually harms society at large.

---

district court found the absence of time limits required it to grant summary judgment for Granite and invalidate the entire ordinance."). Given plaintiffs' often creative use, if not misuse, of our precedent and the terms that define the scope of what they may challenge, even the declaration that standing is limited to the specific statutory "provisions" under which there is an injury may not be specific enough. Thus, to state it more explicitly, to satisfy the standing requirements in Article III, when a plaintiff alleges that a "code," "ordinance," "statute," "act," "provision," etc. has caused him injury, the plaintiff has the obligation to identify the specific language within these organizational units to which the alleged injury is fairly traceable. The limit of Article III standing (or what the plaintiff may ultimately challenge) should not be framed by the fortuitous placement of this language within any given Roman numeral, topical heading, or other artificial demarcation. Instead, standing must be circumscribed by the specific language alone that the plaintiff alleges to have caused injury. See Lance, 635 F.2d at 1140-41. If the placement of the language is determinative, Article III standing is subject to the whims of legislative organizational structure.

Such a requirement would not apply, of course, to an alleged injury that is based on the absence of particular statutory language, as in an injury traceable to a lack of procedural safeguards. Nevertheless, in that circumstance, the plaintiff still cannot challenge the constitutionality of other statutory language that does not concern procedure if he does not allege a separate injury traceable thereto. See FW/PBS, Inc., 493 U.S. at 230-31, 110 S. Ct at 607-08. To the extent that courts have improperly characterized such sections or language as "challenged," that should only mean that those sections are vulnerable to being invalidated in the remedy, or severability, phase.

Moreover, standing is properly regarded as a doctrine of judicial self-restraint.  As Justice Powell observed, "[r]elaxation of standing requirements is directly related to the expansion of judicial power."  United States v. Richardson, 418 U.S. 166, 188, 94 S. Ct. 2940, 2952 (1974).  As the Court has frequently emphasized, any analysis of the concept of "injury" must be based upon "reference to the Art. III notion that federal courts may exercise power only in the last resort, and as a necessity, and only when adjudication is consistent with a system of separated powers and [the dispute is one] traditionally thought to be capable of resolution through the judicial process."  Allen, 468 U.S. at 752, 104 S. Ct. at 3325 (internal quotations and citations omitted).

Accordingly, the narrow approach to standing that we described in Clearwater remains the law of this circuit until changed by an en banc opinion of this court.

47